Rehearing granted, July 5, 2007

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CHRISTOPHER PHELPS & ASSOCIATES, LLC,
            *Plaintiff-Appellant,*

v.

R. WAYNE GALLOWAY,
            *Defendant-Appellee,*

v.

SIMONINI BUILDERS, INCORPORATED,
            *Third Party Defendant.*

DONALD A. GARDNER ARCHITECTS, INCORPORATED; DONALD A. GARDNER, INCORPORATED; FRANK BETZ ASSOCIATES, INCORPORATED,
            *Amici Supporting Appellant.*

No. 05-2266

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-03-429-3)

Argued: October 24, 2006

Decided: February 12, 2007

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Traxler joined.

**COUNSEL**

**ARGUED:** Louis K. Bonham, OSHA & LIANG, L.L.P., Houston, Texas, for Appellant. W. Thad Adams, III, ADAMS & EVANS, P.A., Charlotte, North Carolina, for Appellee. **ON BRIEF:** Albert P. Allan, SUMMA, ALLAN & ADDITON, P.A., Charlotte, North Carolina, for Appellant. Matthew J. Ladenheim, Kathryn A. Gromlovits, ADAMS & EVANS, P.A., Charlotte, North Carolina, for Appellee. Wallace K. Lightsey, Frank S. Holleman, III, Troy A. Tessier, WYCHE, BURGESS, FREEMAN & PARHAM, P.A., Greenville, South Carolina, for Amici Supporting Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

After R. Wayne Galloway began construction of his retirement home on Lake Wylie, near Charlotte, North Carolina, using architectural plans designed and copyrighted by Christopher Phelps & Associates, LLC ("Phelps & Associates"), without permission, Phelps & Associates commenced this action against Galloway for copyright infringement. Phelps & Associates sought damages, disgorgement of profits, and injunctive relief. A jury found that Galloway infringed Phelps & Associates' copyright and awarded it $20,000 in damages, the fee that Phelps & Associates traditionally charged for such plans. The jury also found that Galloway had realized no profits to disgorge. The district court thereafter declined to enter an injunction, finding that the jury verdict had made Phelps & Associates "whole," and entered judgment in favor of Phelps & Associates for $20,000. From that judgment, Phelps & Associates appeals, requesting a new trial on damages and the entry of an injunction prohibiting the future lease or sale of the infringing house and mandating the destruction or return of the infringing plans.

We agree with Phelps & Associates that the district court erred during the damages phase of trial in instructing the jury that Phelps & Associates' copyright was a derivative work. As we explain herein, Phelps & Associates held a copyright in the entire work manifested

in Galloway's house. We conclude, however, that the error was harmless. We also reject Phelps & Associates' challenges to evidentiary rulings. Accordingly, we affirm the judgment incorporating the jury's verdict.

We agree with Galloway's contention that the court in the circumstances presented here may not issue a permanent injunction, as requested by Phelps & Associates, prohibiting Galloway from ever leasing or selling the house. Not only would such an injunction unduly restrain the alienation of real property, it would violate the "first sale doctrine" in 17 U.S.C. § 109(a), which we hold authorizes Galloway to sell or otherwise dispose of the house as a copy for which the remedies in a copyright action have been paid. Other injunctive relief, however, might be available in applying the general principles of equity, as required by *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006), which was decided after the district court's order denying relief in this case. Accordingly, we vacate portions of the district court's order denying injunctive relief and remand for the limited purpose of reconsidering other equitable relief, such as an order requiring Galloway to destroy the infringing plans or return them to Phelps & Associates.

I

R. Wayne Galloway, in anticipation of retirement, planned to build his "dream home" on a lot that he owned on the North Carolina side of Lake Wylie, southwest of Charlotte, North Carolina. Displeased with the design work done by an architect whom he had hired, Galloway went with his son-in-law to view the designs of homes on Lake Norman, an expensive residential area about 30 miles north of Lake Wylie, where his son-in-law was working as an iron-work subcontractor. There, Galloway saw a French-country style house that he liked. His son-in-law approached the builder of the house, Simonini Builders, Inc., and asked the superintendent for a copy of the plans. The superintendent said that Galloway would have to speak with the owner, Mrs. Gina Bridgeford, because "she purchased the plans, they were actually drawn for her." Galloway contacted Mrs. Bridgeford, who gave Galloway her consent for use of the plans "as long as you don't build in our area." As to her authority to give consent, Mrs. Bridgeford testified at trial, "I felt with all we had paid, we owned the

plans at that time." Galloway assured Mrs. Bridgeford that he would not build in the area, telling her that he planned to build on Lake Wylie about 30 miles away. With Mrs. Bridgeford's permission, the superintendent at Simonini Builders gave Galloway a copy of the plans for "The Bridgeford Residence." Each page of the plans included the copyright notice, in small print, of the designing architect as follows:

> © 2000 Copyright — Christopher Phelps & Assoc., L.L.C. These plans are protected under the federal copyright laws. The original purchaser of this plan is authorized to construct one and only one home using this plan. Modifications or reuse of this plan is prohibited.

Galloway altered the plans only to cover the name and address of "The Bridgeford Residence" with the name and address of "The Galloway Residence," and then he copied them for constructing his house.

Phelps & Associates, which designed the Bridgeford Residence, is an architectural firm in Charlotte, North Carolina, that designs upscale custom houses. It created the design for the Bridgeford Residence as a variation of its earlier design — "The Bell and Brown Residence." Bell and Brown had commissioned and paid Phelps & Associates for the earlier design, but ultimately decided not to build the house. Phelps & Associates modified the Bell and Brown design somewhat for the Bridgefords by moving a dormer window, changing the front entry and reconfiguring part of the floor plan, and removing the basement. The Bridgefords paid Phelps & Associates $20,000 for The Bridgeford Residence design, and the Bridgefords built their house on Lake Norman in accordance with that design.

Acting as his own general contractor, Galloway began construction of his house in September 2001, using the Phelps & Associates plans for the Bridgeford Residence. During the course of construction, some of the subcontractors checked back with Phelps & Associates for clarification, particularly with respect to the windows. Phelps & Associates did not then know that the construction was being pursued without permission. Galloway's framing contractor, who had been asked to do some work for Galloway's brother-in-law using pirated

Phelps & Associates plans, surmised that Galloway did not have permission to use the plans and approached Galloway to warn him that he could "get in trouble constructing a copyright plan." Galloway "shrugged his shoulders and said something to the effect: 'They've got to find me, catch me first.'"

Through rumors from subcontractors, Phelps & Associates learned in early 2003 that Galloway was constructing a house using its designs. After confirming that fact, Phelps & Associates sent Galloway a cease and desist letter in July 2003. Upon receipt of the letter, Galloway stopped construction on his house, which was then over half completed. Thereafter, in August 2003, Phelps & Associates registered its plans for The Bridgeford Residence with the Copyright Office and then commenced this action against Galloway for copyright infringement.

In its suit, Phelps & Associates sought compensatory damages, disgorgement of Galloway's profits (claimed as the difference between the value of Galloway's house and his provable expenses in constructing it), and injunctive relief. With respect to compensatory damages, Christopher Phelps, the principal of Phelps & Associates, testified at trial that if Galloway had come to him and asked Phelps & Associates to design "a house like the Bridgeford house," Phelps & Associates would have charged Galloway $20,000 — the same fee that it had charged Mrs. Bridgeford. Christopher Phelps made clear, however, that he would not have sold Galloway the actual Bridgeford Residence design, but something different, as Phelps & Associates prided itself on designing "custom homes." With respect to Galloway's profits, Phelps & Associates presented expert testimony that Galloway's house would be worth $1.1 million when completed. With this estimated value, Galloway would have realized over $200,000 in profits if he were to sell the completed house.

Galloway testified at trial that he would have made no profit in the house had he sold it — he had spent more on the house than it was worth. He estimated that if he completed the house, he would show a loss of about $160,000. He introduced into evidence his receipts and ledger of expenditures for construction to date totaling approximately $660,000, and he estimated that it would cost an additional $250,000 to $300,000 to complete the house. He estimated that upon comple-

tion, the house itself would be worth $758,000. He also introduced into evidence the Mecklenburg County tax assessment of his house when half-completed, which evaluated the house in that state at $408,100.

At the end of the trial, the jury returned a verdict in favor of Phelps & Associates, finding that Galloway had infringed Phelps & Associate's architectural design copyright; awarding Phelps & Associates $20,000 in actual damages; and finding that Galloway had no profits to disgorge. Thereafter, Phelps & Associates requested injunctive relief from the court (1) ordering that the infringing copy of the plans be returned or destroyed; (2) enjoining completion of the house; and (3) permanently enjoining the lease or sale of the house. The court "in its discretion" denied all injunctive relief, finding that the $20,000 jury award made Phelps & Associates "whole." Accordingly, the court entered judgment in favor of Phelps & Associates for $20,000 in damages.

On appeal, Phelps & Associates contends that it is entitled to a new trial on damages because the district court erroneously instructed the jury that "The Bridgeford Residence" design was a derivative work and made certain erroneous evidentiary rulings. It also argues that the district court's refusal to enter an injunction was error as a matter of law because it had proved a past infringement and a likelihood of future infringement.

Phelps & Associates did not obtain an injunction pending appeal, and, according to representations made at oral argument, Galloway has completed the construction of his house, where he now resides. Galloway has also satisfied the $20,000 money judgment.

## II

To obtain a new jury trial on damages, Phelps & Associates argues that the district court (1) erred in instructing the jury on the scope of its copyright, telling them erroneously that Phelps & Associates' design was a derivative work, not an original work in its entirety; and (2) abused its discretion by making several evidentiary rulings. We address these contentions in turn.

A

Phelps & Associates contends first and principally that the jury was improperly instructed that its copyright in the Bridgeford Residence design was a derivative work of the earlier design of the Bell and Brown Residence and that the scope of Phelps & Associates' copyright consisted only of the minimal difference between the two designs. The jury was instructed:

> [Phelps & Associates'] copyright in the architectural work known as the Bridgeford Residence is a derivative work of the architectural work known as the Bell/Brown Residence.

> A derivative work is a work that is based upon one or more preexisting works, including a revision, transformation, or adaptation of a preexisting work.

> [Phelps & Associates'] recovery is limited by the scope of copyright protection afforded a derivative work. You are instructed that the copyright protection in a derivative work covers only the additions, changes, or other new material appearing for the first time in the work.

> It does not extend to any preexisting material and does not imply a copyright in that material. The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.

> The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or substance of any copyright protection in the preexisting material.

Phelps & Associates contends that this instruction essentially told the jury that the copyright consisted of the relocation of a dormer window, a few floor plan changes, and the lack of a basement, and that the jury accordingly attributed no profits to the infringement.

Galloway argues that the derivative work instruction was accurate — that Phelps & Associates' copyright only extended to the new material embodied in the Bridgeford Residence — and that its registration of the Bridgeford Residence design did not effect a registration of the many elements common to the Bridgeford Residence design and the Bell and Brown Residence design.

We agree with Phelps & Associates that the instruction was erroneous. The Bridgeford Residence was not a derivative work as defined in the Copyright Act; Phelps & Associates held a copyright in the entire design. Galloway's position misunderstands a fundamental precept of copyright law, that a copyright is independent of its registration.

Both parties properly recognize that the copyright in a derivative work extends only to the new elements contributed by the author and does not extend to the underlying work. *See* 17 U.S.C. § 103(b). That provision assures that the author of a derivative work does not acquire ownership over constituent material that is already in the public domain or is owned by someone else. But when the author of the derivative work *also* has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author.

Galloway's emphasis on the scope of Phelps & Associates' *registration* of the Bridgeford Residence design places more emphasis on the registration than the Copyright Act provides. The copyright itself does not depend on registration. *See* 17 U.S.C. § 408(a) ("[R]egistration is not a condition of copyright protection"). It is obtained without formalities simply when a work has been fixed in a tangible medium of expression. *See id.* §§ 102(a), 408(a). Once fixation of an original work has taken place, the author has a copyright in the work, and registration with the Copyright Office serves only supporting roles. For instance, it provides evidence of a copyright, *see id.* § 410, and it is required as a condition to bringing suit, *see id.* § 411.

In this case, the undisputed facts are that Phelps & Associates was the author of the Bell and Brown Residence design and therefore owned the copyright in that work, even though it never registered that

copyright. Phelps & Associates was also the author of the Bridgeford Residence design, which was a modification of the Bell and Brown Residence design. Phelps & Associates did register the Bridgeford Residence design, but not as a derivative work. It simply registered the entire design, as it was the author of the entire design.

While Phelps & Associates only registered the Bridgeford Residence design, that registration satisfied the prerequisite for suit under 17 U.S.C. § 411 for the *entire design*, even though some of it was created earlier in the form of the Bell and Brown Residence design. *See Xoom v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003) (holding that a party has standing to sue on all components of a registered work if he owns a copyright on those components, even if the underlying components have not been registered); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][c], at 7-173 (perm. ed., rev. vol. 2006) (same). Therefore, even if Phelps & Associates had only registered the Bridgeford Residence design *as a derivative work*, it could have sought damages and profits for infringement of all of the components, including those embodied in the Bell and Brown Residence design, because it held the copyright in all of the components. The scope of registration need not precisely trace the scope of the copyright for the holder to sue. *See Educ. Testing Serv. v. Katzman*, 793 F.2d 533, 538-39 (3d Cir. 1986) ("[T]he statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express"); *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001) (same).

Accordingly, Phelps & Associates was entitled to sue for remedies based on infringement of the entire Bridgeford Residence design, even though that design included components of an earlier work created by Phelps & Associates; it was the author and therefore owner of the copyright in all of the copyrightable design elements. The instruction given by the district court to the jury was therefore erroneous.

Nonetheless, we conclude that the error was harmless. Three different aspects of the trial — the district court's other instructions, the evidence presented at trial, and the jury's verdict — indicate that the jury followed the other instructions given by the district court and

understood that they were to award damages based on the entire Galloway house as an infringement of the Bridgeford Residence design.

First, when instructing the jury about the relief it was to consider if it found infringement, the court correctly stated that Phelps & Associates would be entitled to both actual damages for infringement and to all profits of the infringer resulting from the copyright infringement. *See* 17 U.S.C. § 504. In instructing the jury about the actual damages, the court said:

> Actual damages for infringement are measured according to market value, which means what a willing buyer would have been reasonably required to pay a willing seller for the copyright holder's work.

> Stated differently, this amount is what [Phelps & Associates] would have received from a willing buyer as a *reasonable licensing fee* for the use of the Bridgeford Residence architectural works.

(Emphasis added). On actual damages, Phelps & Associates introduced evidence that it charged Mrs. Bridgeford $20,000 as its fee for the Bridgeford Residence design. Christopher Phelps testified further that if Galloway had come to him to create a similar design, Phelps & Associates would likewise have charged Galloway a $20,000 fee. There was no other evidence on Phelps & Associates' actual damages as they were defined by the court's instructions. In returning a verdict, the jury awarded Phelps & Associates $20,000, consistent with the evidence about the licensing fee for the *entire* Bridgeford Residence design. Had the jury paid attention to the court's instruction on derivative works, it would have awarded a licensing fee only for the elements added by the Bridgeford Residence design to the Bell and Brown Residence design, i.e. a relocated dormer and a slightly reconfigured floor plan. There was no evidence, however, of the market value of these design elements, if they had any substantial value at all. And if the jury speculated on this matter, having no evidence of the design value of the two elements, it would have given Phelps & Associates only a portion of the $20,000 fee that represented the full licensing fee charged by Phelps & Associates for the entire house.

With respect to the profits for which Phelps & Associates sought disgorgement, the district court instructed the jury:

> In addition to its actual damages, the law allows a copyright holder to recover all profits of the infringer resulting from copyright infringement.

> An infringer's profits consist of the amount of the infringer's gross revenues from the infringing activity less the expenses of producing the infringing work.

Relating this general instruction about profits to the circumstances of this case, the district court referred the jury to the costs of the entire house less the expenses incurred in constructing the entire house. The court stated:

> Galloway bears the burden of proving the expenses he incurred *in constructing the house at issue*. If he fails to prove his direct expenses, you must find the amount of his gross revenues as the amount of his profits.

> For an item to be a deductible expense, Galloway must prove that he actually incurred such amounts *in the construction of the house in question*, and that such expense actually assisted *in the construction of the house in question*.

(Emphasis added). Again, no evidence was introduced to the jury from which to conclude what the profits were for the minor design changes between the two works — the addition of the dormer and the changed configuration of the layout. All of the evidence focused on the market value of the entire house and the expenses that Galloway incurred in constructing it. In response to the court's instructions and the evidence, the jury found that Galloway realized $0 in profits. If the jury had believed that Galloway actually had profits from the two changed elements, it would have allocated *some amount* to those elements. Whether that was $2,000 or a nickel, *some amount* of infringer profits would be associated with the relevant design changes. Because $0 was given in profits, the jury apparently credited Galloway's position that there were no profits in the house. This conclusion was

amply supported by the evidence presented, which included Galloway's own valuation, the county tax assessment, and the loss taken by the Bridgefords when they sold their identical house.

If the jury had given effect to the court's instruction relating to derivative works, it would have applied that instruction to both its award of actual damages and its finding with respect to infringer profits. Yet such an application is belied by the verdict itself.

Not only does the jury's verdict of $0 in profits reveal that it considered profits from the *entire* house design despite the derivative work instruction, finding that none were proved, the district court's other instructions overrode any prejudicial effect that might have resulted from the erroneous instruction. The court gave instructions telling the jury how to apportion damages between conduct that was infringing and conduct that was not. The instructions imposed the burden *on Galloway* to prove any profits attributable to non-infringing conduct. On a failure of that proof, the jury was instructed to award *all profits* realized from the house. As the court stated:

> Moreover, if non-infringing factors are so intertwined with infringing factors that it is impossible to apportion profits, then no apportionment is allowed.
>
> All profits should be deemed attributable to the infringement unless Galloway proves by a preponderance of the evidence that they are not.
>
> If you have any doubts as to the amount of the profits or whether they resulted solely due to other factors, you must resolve those doubts in favor of [Phelps & Associates].

Galloway did not present any evidence of apportionment at trial to give effect to this apportionment instruction or the derivative work instruction. Consequently, the jury was instructed to award damages as if *the entire house* was an infringement of Phelps & Associates' copyright. It could have awarded $0 in profits *only* if it concluded there were no profits at all. While the jury did award Phelps & Associates the full amount of actual damages that it claimed and proved,

the jury concluded that Galloway had realized no profits. If the jury had found any profits and if Galloway had carried his burden on apportionment, the jury still would have given some amount of the profits to Phelps & Associates in accordance with both the apportionment instruction and the derivative work instruction. Its failure to do so satisfies us that the jury did not believe there were any profits.

In short, the erroneous derivative work instruction had no operative effect on the jury's award and therefore was harmless. Accordingly, we reject Phelps & Associates' request for a new jury trial on damages based on the district court's erroneous instruction.

B

Phelps & Associates also contends that it is entitled to a new trial on damages because of erroneous evidentiary rulings made by the district court during the course of trial. We have reviewed each of the court's rulings and conclude that the district court did not abuse its discretion.

First, Phelps & Associates challenges the district court's admission of Galloway's receipts and ledger which he offered to prove expenses incurred in constructing his house, contending that these documents were inadmissible hearsay evidence. We conclude, however, that they could appropriately have been admitted under the business records exception, *see* Fed. R. Evid. 803(6), or the residual hearsay exception, *see* Fed. R. Evid. 807.

Phelps & Associates also challenges the admission of a Mecklenburg County tax assessment, offered to prove the value of Galloway's property. It argues that the assessment contained undisclosed expert testimony, i.e., a real estate appraisal, subject to the gatekeeper provisions of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We conclude, however, that the assessment could appropriately have been admitted under the agency records exception to the hearsay rule, Fed. R. Evid. 803(8), which holds such documents sufficiently reliable because they represent the outcome of a governmental process and were relied upon for non-judicial purposes.

Next, Phelps & Associates challenges the district court's admission of Galloway's own testimony on the value of his property. Lay opinion testimony, however, may appropriately be admitted if it is helpful to the jury; if it is based on the perception of the witness; and if it is not expert testimony under Federal Rule of Evidence 702. *See* Fed. R. Evid. 701. Courts indulge a common-law presumption that a property owner is competent to testify on the value of his own property. *See, e.g.*, *North Carolina State Highway Comm'n v. Helderman*, 207 S.E.2d 720, 725 (N.C. 1974); Fed. R. Evid. 701 advisory committee's note ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an [expert] . . . . The amendment does not purport to change this analysis").

Finally, Phelps & Associates complains that its expert witness should have been allowed to testify to rebut the tax assessment and Galloway's testimony on the value of his property. The expert proposed to testify on the reliability of the Mecklenburg County tax appraisal. The court listened to Phelps & Associates proffer of the expert's testimony out of the presence of the jury and concluded that it was "unhelpful" and "potentially misleading." The district court has broad discretion to regulate the admissibility of such testimony, and our review of the record indicates that the court did not abuse its discretion. *See Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 791 F.2d 288, 291 (4th Cir. 1986).

In sum, we reject Phelps & Associates' arguments for a new trial on damages and affirm the jury's verdict.

### III

After the jury returned its verdict, Phelps & Associates filed a motion under 17 U.S.C. §§ 502, 503(b) for injunctive relief (1) to prohibit the completion of the house; (2) to enjoin permanently the lease or sale of the house; and (3) to require the destruction or return of the infringing plans. The district court denied the motion and all of the relief requested, stating:

> After trial in this matter, the jury awarded the Plaintiff $20,000 in actual damages. The court finds that the Plaintiff

has been made whole, and in its discretion, declines to order Defendant to destroy all copies of the plans at issue. Moreover, the court declines to enjoin further construction of the house, alteration of the house, or the future lease or sale of the house. Evidence at trial revealed that the house is substantially constructed and that only interior finish work remains to be done. Thus, there is no likelihood that completion of the house will result in further infringement. Taking into account equitable considerations, the court refuses to grant the relief requested by the Plaintiff.

Phelps & Associates contends that in denying injunctive relief, the district court erred as a matter of law. It argues that the court denied injunctive relief simply because Phelps & Associates received damages and thereby had been made "whole." It maintains that "the mere fact that a copyright owner may recover damages does *not* negate his right to injunctive relief." *See Lyons P'ship, LP v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (remanding for the entry of a permanent injunction *and* a determination of the amount of damages award). Phelps & Associates argues affirmatively that when copyright infringement has been proved and there is a threat of continuing infringement, the copyright holder is "*entitled* to an injunction." *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990); *see also Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996); *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994); *Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732 (8th Cir. 1986). Because Phelps & Associates says that it made that showing, it claims that it was entitled to injunctive relief.

Insofar as Phelps & Associates suggests that it is *entitled* to injunctive relief, we reject the argument. *See eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006). In *eBay*, the Supreme Court rejected any notion that "an injunction automatically follows a determination that a copyright has been infringed." 126 S. Ct. at 1840 (reversing the Federal Circuit, which had articulated "a 'general rule,' unique to patent disputes, 'that a permanent injunction will issue once infringement and validity have been adjudged'"). The Supreme Court reaffirmed the traditional showing that a plaintiff must make to obtain

a permanent injunction in any type of case, including a patent or copyright case:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839. Moreover, the Court reiterated that even upon this showing, whether to grant the injunction still remains in the "equitable discretion" of the court.

Rejecting Phelps & Associates' claim to an automatic injunction or an "entitlement" to one, we now apply traditional equity principles to each of Phelps & Associates' requests for injunctive relief to determine whether the district court abused its discretion.

### A

Phelps & Associates' first request, that Galloway be enjoined from completing the house, appears to be moot. At oral argument, the parties represented that the house had been completed.

### B

Phelps & Associates' second request for equitable relief, that Galloway be enjoined from leasing or selling the completed house, is argued with the following syllogism: *First*, the completed house is an infringing copy of Phelps & Associates' copyrighted work. *See* 17 U.S.C. § 101. *Second*, as the copyright holder, Phelps & Associates has the exclusive right to lease or sell its copyrighted work. *See id.* § 106(3). *Therefore*, Galloway may never lease or sell the house without infringing Phelps & Associates' copyright. *See id.* § 501(a). Because it is likely that Galloway will lease or sell his house, it is likely that he will infringe Phelps & Associates' copyright, and this likely infringement should be foreclosed by a permanent injunction.

We agree with Phelps & Associates' argument that an award of damages that fully compensates a plaintiff for all damages suffered does not categorically preclude injunctive relief. The damages in this case were awarded for past conduct and the injunctive relief requested is forward-looking, addressing claimed future injury. Although future injury of an economic nature can often be reflected in an award of damages, the requested injunction to prohibit a future lease or sale of Galloway's house could not have been addressed by an economic award. When and in what market condition Galloway would be leasing or selling his house cannot be surmised with the necessary certainty for a damages award. Accordingly, such injury, if redressable, would either be "irreparable" or any damages, "inadequate." *See eBay*, 126 S. Ct. at 1839. Therefore, injunctive relief is not foreclosed by the award of damages in this case.

The bigger question is whether a future lease or sale of a house, the construction of which has already been subject to a copyright infringement action, will cause an injury for which the Copyright Act provides a remedy in addition to that already provided for the construction of the house. Phelps & Associates claims that such a lease or sale of the house would constitute an additional copyright infringement in that it would violate its exclusive right to lease and sell conferred by 17 U.S.C. § 106(3) (providing that copyright owner has exclusive rights to sell, rent, lease, or lend copies). It contends that while it would ordinarily be entitled to profits resulting from any such lease or sale, the inability to determine profits at the present time leaves it no recourse but to seek equitable relief. In sum, Phelps & Associates argues that it is entitled to the perpetual stream of profits from the infringing copy — presumably for the 95-year life of the copyright, *see* 17 U.S.C. § 302(c) — and that an injunction is the only practical way to ensure that it may capture that stream of profits.

While the lease or sale of an infringing copy is generally a violation of the exclusive rights given to a copyright holder, the "first sale doctrine" of 17 U.S.C. § 109(a) creates an exception as it applies to the particular copy in this case, Galloway's house. Section 109(a) provides that "notwithstanding [the copyright holder's exclusive rights], the owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the posses-

sion of that copy." The *construction* of the Galloway house, as an infringement of Phelps & Associates' copyright, has been subjected to the remedies of the Copyright Act in this action. Accordingly, Galloway may, after satisfying the judgment for his unlawful construction of the house, "sell or otherwise dispose" of it without further liability to Phelps & Associates.

Contending that the first sale doctrine does not apply in this case, Phelps & Associates focuses our attention on the requirement of § 109(a) that the first sale be "lawfully made" or be authorized by it. It argues that since Galloway's house was not a copy "lawfully made," any future lease or sale of the house would be an infringement. In other words, Phelps & Associates contends that the tainted original acquisition and use of the Bridgeford Residence design permanently disables the alienability of Galloway's house until Phelps & Associates, as copyright holder of the house's design, releases its claim.

While Phelps & Associates' argument would be well taken with respect to any lease or sale that was threatened or occurred *before* the judgment in this case, *see Palmetto Builders & Designers, Inc. v. Unireal, Inc.*, 342 F. Supp. 2d 468, 473 (D.S.C. 2004), its bringing of this action and obtaining relief from the district court for the construction of the house provides authorization that satisfies § 109(a). When the district court entered judgment that awarded Phelps & Associates damages and infringer's profits, if any, and that declined to order the destruction or other disposition of the house, the house became a lawfully made copy. This is because the illegal character of the copy was fully redressed by the remedies requested and granted with respect to the making of the copy.

Just as a converter of property obtains good title to the converted property after satisfying a judgment for conversion, so does an infringer obtain good title to the physical copy after satisfaction of the judgment under the Copyright Act. *See* Restatement (Second) of Torts § 222A, cmt. c ("When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale"). The Second Circuit reached this very conclusion in the context of a patent or copyright:

> [T]he "first sale" which terminates the exclusive right to vend patented or copyrighted objects need not be a truly voluntary one, but can consist of some reasonable and recognized form of compulsory transfer, such as a judicial sale or court-compelled assignment. In such cases the ultimate question embodied in the "first sale" doctrine — "whether or not there has been such a disposition of the article that it may fairly be said that the patentee (or copyright proprietor) has received his reward for the use of the article" — is answered in the affirmative . . . . If rationalization is needed, this can be in terms of involuntary "sale," of a presumed "consent" by the proprietor or patentee to the rights and remedies that are normally applicable to material objects in the course of trade. . . . [W]e [ ] reject plaintiff's extreme position that copyrighted goods are immune from the normal remedies . . . until the proprietor has had one truly voluntary "sale."

*Platt & Munk Co. v. Republic Graphics, Inc.*, 315 F.2d 847, 854 (2d Cir. 1963) (citations omitted); *see also Bourne v. Walt Disney Co.*, 68 F.3d 621, 632-33 (2d Cir. 1995) (holding that certain licenses can be a "first sale" authorizing owner of copy to sell it); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921-23 (Fed. Cir. 1995) (holding that patent holder's nonpayment of debts is authorization to sell patented copies).

The legislative history of the Copyright Act of 1976 similarly suggests that the copyright owner need not *voluntarily* authorize a sale for the first sale doctrine to apply. "To come within the scope of Section 109(a), a copy . . . must have been 'lawfully made under this title,' *though not necessarily with the copyright owner's authorization*. For example, any resale of an illegally 'pirated' phonorecord would be an infringement, but the disposition of a phonorecord legally made under the compulsory licensing provisions of section 115 would not." H.R. Rep. No. 94-1476, at 79 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5693 (emphasis added). Thus, under the first sale doctrine, an infringer is entitled to sell, or otherwise dispose of any copy that the court does not order destroyed or otherwise disposed of, without further obligation, once he satisfies the judgment

that remedied the infringement, even if the copy was originally pirated.

By bringing an infringement action against Galloway, Phelps & Associates essentially sold him its interest in the house in exchange for the appropriate remedies under the Copyright Act. Once those remedies have been sought and a judgment has been rendered, the copyright holder loses his right to sell that particular manifestation of his copyright.

Phelps & Associates argues that this understanding of the first sale doctrine amounts to a judicially-created compulsory license, which is disfavored. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 446 n.28 (1984). The reliance on *Sony*, however, is misplaced. The remedies under the Copyright Act do not resemble a license because the Copyright Act remedies are far broader than simply requiring a defendant to make license payments. Under the Copyright Act, a copyright holder is entitled to both actual damages — the market price of the license — *and* disgorgement of the infringer's profits, which might be immensely greater than the price of a license. *See* 17 U.S.C. § 504. Moreover, the infringer takes the risk that the district court will order, in its discretion, the destruction or other disposition of the infringing article. *See id.* § 503(b). In the garden-variety piracy case, such orders are routinely issued. *See, e.g.*, *Loud Records, LLC v. Lambright*, Civ. No. 1:05-0171, 2006 U.S. Dist. LEXIS 38016 (S.D. W. Va., March 30, 2006); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. 2003); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995). Given the risks attendant to infringement, the interest in having potential infringers negotiate with copyright holders is adequately secured. *See Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994) ("By stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent").

The alternative to giving Galloway rights under the first sale doctrine of § 109(a) would inappropriately expand the scope of Copyright Act remedies in circumstances such as those before us. A house or building, as an expression of the architect's copyrighted plans, usually

has a predominantly functional character. This functional character was the reason American copyright law, pre-Berne Convention, denied protection to constructed architectural works altogether. *See* 1 Nimmer & Nimmer, *supra*, § 2.08[D][2][b], at 2-126 ("an architectural structure ordinarily constitutes a 'useful article' . . . . For that reason, such structures remained unprotected by United States copyright law from passage of the current [Copyright] Act until enactment of an amendment, the Architectural Works Copyright Protection Act"). This is the same reason that Congress manifested an expectation that injunctions will not be routinely issued against substantially completed houses whose designs violated architectural copyrights. H.R. Rep. No. 101-735, at 13-14 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6944 (explaining that buildings "are the only form of copyrightable subject matter that is habitable"). Those considerations are at their strongest when the architectural structure is completed and inhabited, as here.

Moreover, such an injunction would be overbroad, as it would encumber a great deal of property unrelated to the infringement. The materials and labor that went into the Galloway house, in addition to the swimming pool, the fence, and other non-infringing features, as well as the land underneath the house, would be restrained by the requested injunction. As such, the injunction would take on a fundamentally punitive character, which has not been countenanced in the Copyright Act's remedies. *See Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 931 (7th Cir. 2003) (noting that the Copyright Act does not authorize punitive damages); *cf.* 17 U.S.C. §§ 504, 505 (specifying the remedies available under the Copyright Act). In a similar vein, the requested injunction would undermine an ancient reluctance by the courts to restrain the alienability of real property. *See, e.g.*, *Williams v. First Fed. Sav. & Loan Ass'n*, 651 F.2d 910, 919 n.18 (4th Cir. 1981); *Jiggets v. Davis*, 28 Va. 368 (1829); *Howard v. Earl of Shrewsbury*, (1867) 2 Ch. App. 760.

While Galloway has title to the house that is free and clear of restrictions arising from his infringement, he has not obtained any rights in the house's design. His ownership is limited to the house as a single manifestation of the design. Like the owner of a book, he will have the power to lease or sell the house, but not to copy its design in another house or engage in any other activity that remains the

exclusive right of the copyright holder. *See Red Baron-Franklin Park, Inc. v. Taito Corp.*, 883 F.2d 275, 280 (4th Cir. 1989) (first sale doctrine diminished copyright holder's distribution right, but not other exclusive rights such as the right of publication). In short, Phelps & Associates retains its copyright, albeit not the one-house manifestation of it. *See* 2 Nimmer & Nimmer, *supra*, § 8.12[B][1][d] ("the first sale inquiry examines ownership of the tangible property in which the copyrighted work has been embodied, not ownership of the copyright itself").

For all of these reasons, we affirm the district court's order denying an injunction against the future lease or sale of Galloway's house.

## C

Finally, Phelps & Associates contends that the district court erred as a matter of law in refusing to grant injunctive relief to require the return or destruction of the infringing plans. *See* 17 U.S.C. § 503(b).

Again, any relief granted in equity is at the discretion of the district court, and a petitioner cannot claim that it was *entitled* to injunctive relief. *See eBay*, 126 S. Ct. at 1839. Nonetheless, the district court, without the benefit of *eBay*, may have denied equitable relief categorically, rather than basing its analysis on the traditional principles of equity.

In denying Phelps & Associates' motion for an injunction, the district court stated:

> The court finds that the Plaintiff has been made whole, and in its discretion, declines to order Defendant to destroy all copies of the plans at issue.

Being made whole in the circumstances of this case, however, could only have referred to the jury award of damages for the cost of a license and its finding that Galloway realized no profits for disgorgement. It could not have related to other questions, such as the existence of infringing plans or future acts of infringement.

To explain its ruling, the court stated only,

> Evidence at trial revealed that the house is substantially constructed and that only interior finish work remains to be done. Thus, there is no likelihood that completion of the house will result in further infringement.

It does not follow, however, that because the plans were not needed to complete the house, they should not therefore be returned or destroyed, as authorized by 17 U.S.C. § 503(b). The risk of future infringement includes the possible use of plans to build another house, publication of the plans, or other violations of the exclusive rights conferred by 17 U.S.C. § 106. *See Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 690 (4th Cir. 1992) (affirming the entry of a preliminary injunction against further unauthorized use and copying of copyrighted software).

When Phelps & Associates requested the return or destruction of the infringing plans, the district court was obligated to consider the traditional factors for equitable relief. Yet it appears that the court did not do so. At most, it stated without explanation that it declined "in its discretion . . . to order defendant to destroy all copies of the plans at issue." Considering the court's ruling in the context of the admonitions given in *eBay*, we cannot conclude that the district court properly performed its equitable functions. *See eBay*, 126 S. Ct. at 1839. Therefore, we vacate that portion of its order as an abuse of discretion.

In sum, while we affirm the jury's verdict and the district court's order refusing to enjoin the future leasing or sale of Galloway's house, we remand this case for further consideration, in light of *eBay*, of Phelps & Associates' request for injunctive relief with respect to the return or destruction of the infringing plans.

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*