NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2424
_____

PARMINDER SINGH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A206-898-248)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2023
_____

Before: JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges*.

(Opinion Filed: April 12, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR. *Circuit Judge.*

Parminder Singh, a native and citizen of India, seeks this Court's review of the Board of Immigration Appeals' (BIA) final order of removal. In that decision, the Board affirmed the Immigration Judge's (IJ) underlying denial of Singh's application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the following reasons, we will affirm the Board's final order of removal.

## I.      BACKGROUND

### A.  Factual Background

Singh was born in India and was raised in a religious, farming family comprised of his parents and two older brothers: Navjot and Prabhot Singh. Both of Singh's older brothers fled to the United States and were granted asylum.

Navjot apparently became an active member of the Shiromani Akali Dal Amritsar (SADA or Mann) political party in April 2013. He frequently requested that Parminder Singh assist him in disseminating political literature. *Id.* Because of his work, Singh was allegedly contacted by an "unknown person from an unknown phone number" and that unknown caller warned Singh to "stop working for the [Mann] Party," and predicted that he would be killed if he did not join the Akali Dal Badal (Badal) party, a rival political party and the ruling party in Punjab, India. AR 168-69. Singh did not report this one-minute call to the police.

Singh alleges that on two occasions, he had been threatened and beaten by members of the Badal party before his departure to the United States.

The first incident happened a few weeks after the anonymous phone call. While engaging in political canvassing, Singh was allegedly attacked by Badal members. When he returned home, Singh's grandmother contacted a local doctor who examined Singh and his minor injuries. Singh did not report the assault to the police because he "wasn't that discouraged" by the "attack" and did not take it "serious[ly]." *Id.* at 209-210. Singh joined the Mann party shortly after.

About two months later, Singh was allegedly questioned and then attacked by three people wielding sticks. As they fled the scene, his assailants apparently warned Singh to "stop Mann party work" or he would be killed. *Id.* at 240. Again, upon his return to his village, he was seen by a local doctor who treated him by "putting bandages" on his minor injuries. *Id.* at 176.

Following the second encounter, Singh allegedly packed his bags, had his family contact an agent in Delhi to arrange Singh's departure from India, and hid with the agent for 40 days before departing on October 11, 2014.

Singh fears that, if he were returned to his native country, government officials and the incumbent political group, "no matter which party is ruling in India," could find and harm him because of his membership in the Mann political party. *Id.* at 241. Further, he believes that Mann Party members are targeted and cannot safely reside "anywhere in India." *Id.* Singh acknowledged that the Bharatiya Janata Party (BJP) organization, not the Badal Party, was the political faction currently in power in India. However, he alleged that the Badal and BJP were aligned, such that they were essentially "the same" and that the prior threats and attacks were committed by both groups. *Id.* at 215-16 (detailing that "they

3

look" and feel "the same"). When questioned whether there was any evidence in the record to show that the "Badal Party acts for the BJP Party," Singh acknowledged that he did not possess any such corroboration, *id.* at 216, 220, but he nonetheless believed that a coalition existed, rationalizing that "[a]fter 2012, the election happened then the Badal Party was in power and even now the BJP is in power," *id.* at 219.

## B. Procedural History

### 1. The IJ's Decision.

In mid-February 2015, Singh attempted to illegally enter the United States. Immigration authorities captured him and placed him in removal proceedings. Singh expressed a fear of returning to India and was referred to an asylum officer for a credible fear interview. The asylum officer concluded that there was a credible fear of return and Singh's claim was then handed over to an Immigration Court in Los Fresnos, Texas, for adjudication in removal proceedings.

After several run-ins with the law, appearances before immigration authorities, and several successful motions to change venue and to be released from custody, this case fell on the desk of an IJ in Philadelphia. Once it did, Singh applied for asylum, withholding of removal, and CAT protection before the Philadelphia Immigration Court. He admitted to the charge of removability.

The IJ issued a decision on June 3, 2019, that found Singh removable as charged and denied his applications for relief and protection. In so ruling, the IJ noted that Singh's family members had been granted asylum based on their claims of past problems with Badal members, but found Singh ineligible for such relief because he had failed to

4

demonstrate either past persecution or that his claimed fears of future harm were objectively well founded.

The IJ also noted that unfulfilled, telephonic threats alone did not rise to the level of persecution. The IJ proceeded to consider the single telephonic threat Singh received in the context of his two ensuing assaults and found that his cumulative past experiences in a three-month period, while "not insignificant," did not rise to the level of severity necessary to constitute "persecution" under the Immigration and Nationality Act (INA). AR 99.

The IJ next determined that Singh also failed to show that his fear of future harm was objectively reasonable because he did not demonstrate that the unnamed Badal Party members who had harmed him in the past would seek to harm him in the future.

Since Singh had not sustained the lower burden of proof for asylum, the IJ found that Singh necessarily fell short of clearing the higher evidentiary bar required for withholding of removal. Turning to Singh's request for CAT protection, the Judge found that Singh did not show the requisite clear probability that he would be tortured, by or with the acquiescence of the Indian government, upon his return to India. Particularly, since he had not been tortured in the past; he provided no reason why the police would seek to arrest, detain, or torture him in the future; and he had not shown that the government would allow him to be tortured by followers of the Badal Party. Singh timely appealed the IJ's denial of relief and protection to the Board.

### 2. *The Board's Decision.*

In his appeal, Singh alleged that the IJ erred by denying his applications for asylum and withholding of removal because (1) he had demonstrated past persecution where a

5

single incident of harm or menacing and concrete threats to his life can suffice to constitute persecution; (2) his past persecution created a presumption of future persecution that was not rebutted by DHS; and, (3) his fear of future persecution was objectively reasonable where Badal members beat him twice and persecuted his brothers, and where the submitted evidence of the existing country conditions in India reflected that there were political prisoners in certain states as well as widespread corruption, such that the government would be unable or unwilling to protect him. Singh also argued that he qualified for CAT protection for the same reasons he qualified for asylum, further contending that internal relocation within India was unfeasible.

In a decision rendered on July 5, 2022, the Board affirmed the IJ's underlying determination and dismissed the appeal.[1]

## II.    JURISDICTION

Under the INA, we have exclusive jurisdiction to review final orders of removal. 8 U.S.C. § 1252. However, our jurisdiction is limited to the agency's determinations regarding Singh's applications for asylum and withholding of removal because Singh, in his appeal to the Board, did not meaningfully challenge the IJ's denial of CAT protection and therefore failed to exhaust his administrative remedies as required by 8 U.S.C. § 1252(d)(1).[2] *See Flores v. Att'y Gen.*, 856 F.3d 280, 296-97 (3d Cir. 2017) ("In this appeal,

---

[1] The Board also found that Singh had not meaningfully challenged the IJ's denial of his CAT claim in his appeal brief to the Board and, thus, deemed this issue waived.

[2] Singh also does not argue or mention his eligibility for CAT protection in his opening brief. *See Khan v. Att'y Gen.*, 691 F.3d 488, 495 n.4 (3d Cir. 2012) ("[A]n issue is waived unless a party raises it in its opening brief.").

Flores does not meaningfully dispute the BIA's conclusion that she failed to appeal the IJ's ruling on her CAT claim. As a result, she did not exhaust her CAT claim, and we therefore lack jurisdiction to review it.").

Singh timely petitioned for a review of the Board's order.

## III. STANDARD OF REVIEW

Where the BIA "affirms and partially reiterates the IJ's discussions and determinations," this Court reviews "both decisions." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). The Court reviews the agency's denial of asylum and withholding of removal, including the determination that a petitioner's harm did not rise to the level of persecution, for substantial evidence. *See, e.g.*, *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 n.1 (3d Cir. 2021). Under this deferential standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The Court reviews legal questions *de novo. Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020).

## IV. DISCUSSION

An applicant for asylum bears the burden to show a sufficient nexus between persecution based on his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1); *see Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 129 (3d Cir. 2009). Persecution does not encompass all treatment that our society regards as unfair, unjust, unlawful, or even unconstitutional. *Fatin v. I.N.S.*, 12 F.3d 1233, 1243 (3d Cir. 1993). Rather, persecution encompasses only grave harms

7

such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Id.* at 1240.

Absent a finding of past persecution, an applicant may independently show that his prospective fear of persecution is well founded by demonstrating that his subjective fear of harm is objectively reasonable. *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 108 (3d Cir. 2010). To demonstrate that a fear is objectively reasonable, the applicant must evince that he will be individually targeted for persecution on account of a protected ground or that there is a pattern or practice of persecution of a statutorily protected group of which the applicant is a member. 8 C.F.R. § 1208.13(b)(2)(iii); *Doe v. Att'y Gen.*, 956 F.3d 135, 151 (3d Cir. 2020).

The standard for withholding of removal is higher than the standard for asylum because it requires that the applicant show that his fear of future persecution is "more likely than not" to occur. *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011).

**A. Singh has not established harm rising to the level of persecution or that his prospective fear of persecution is objectively reasonable.**

As the agency reasonably determined, Singh did not demonstrate that the harm he experienced in India rose to the level of "persecution" as that term is contemplated in the INA. AR 3-4, 96-99. Where, as here, Singh's claim is based on three, fleeting events which did not result in serious or significant harm or injury, he has not shown that the record compels a conclusion contrary to the agency's determination.

Singh received a threatening telephone call spanning one minute, which was followed two weeks later by a one-to-two-minute minor assault by Badal members, and

8

culminated two months later in a second confrontation with three Badal followers who again assaulted Singh for less than two minutes and left him with minor injuries. Singh was able to return home after each assault and described his injuries as "scratches," "bruises," and "marks." *Id.* at 195-97, 209. In fact, he did not call the police for the first assault and went to the police station three days after the second assault.

Singh has not made a showing that compels a finding of past persecution given the infrequency and number of incidents, the definitively brief duration of each interaction, and the absence of any serious or lasting injury. *See e.g.*, *Kibinda v. Att'y Gen.*, 477 F.3d 133, 119-20 (3d Cir. 2007) (finding five-day detention and being struck with a heavy object resulting in injury requiring stitches was not persecution); *Wakkary v. Holder*, 558 F.3d 1049, 1059-60 (9th Cir. 2009) (ruling that petitioner's past experiences, including a mugging at knifepoint and two beatings, considered cumulatively, did not compel a finding of past persecution). Singh has not shown that a reasonable trier of fact would be compelled to conclude that the harm he suffered rose to the requisite level of severity to qualify as persecution.

Having failed to establish past persecution, Singh did not warrant a presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(1)(i); *see also Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015). Hence, it was incumbent upon Singh to independently establish that his fear of future persecution was objectively reasonable. *Espinosa-Cortez*, 607 F.3d at 108. Singh, however, failed to meet this burden.

As the agency held, Singh did not demonstrate that his fear of future persecution was well founded, much less more likely than not to occur, because he failed to present

9

evidence that the Badal members who had harmed him in the past would seek to harm him in the future; that he would be singled out for persecution upon his return on account of his Mann Party affiliation; or that there was widespread persecution of Mann followers by rival political parties.

Moreover, in his brief to this Court, Singh does not address, much less challenge, the Board's decision in this regard. As such, he has waived these issues. *See Khan*, 691 F.3d at 495 n.4 (recognizing that an issue, not raised in an opening brief, is waived); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). Considering the foregoing, Singh has not shown that the record compels a conclusion contrary to the agency's denial of asylum and withholding of removal. 8 U.S.C. § 1252(b)(4)(B).

**B. Singh's five principal arguments against the agency decision fall short.**

First, Singh argues that the Board used an incorrect legal standard by requiring that any threat be fulfilled or imminent. Instead, he counters, the Court should have used "concrete and menacing." Pet. Br. at 8-12**.** But the Board never mentioned or relied on imminence or fulfillment in its assessment of past persecution. The Board evaluated the incidents in their totality and relied on the IJ's cumulative and contextual evaluation of Singh's experiences from the telephonic threat, combined and in conjunction with the two subsequent assaults, in finding that he did not show harm of a severity or significance required to constitute "persecution."

Second, Singh argues that the agency erred by comparing the facts of his case to those outlined in *Kibinda*, 477 F.3d at 119-20, which found a five-day detention and being hit with a heavy object causing an injury that required sutures and resulted in scarring was not persecution. Singh attempts to distinguish the facts in his case from those of *Kibinda* on three grounds. First, he asserts that Kibinda was not actually beaten, but was unintentionally hit by a projectile. Second, he asserts that, unlike him, "Kibinda did not suffer multiple physical assaults and beatings." Pet. Br. at 14. And third, he asserts that Kibinda never received a death threat. Ultimately, Singh's attempt to distinguish his case from *Kibinda* is unconvincing. Three fleeting events do not, even when considered together, amount to significant harm or injury.

Third, Singh argues that the Board failed to perform a *de novo* assessment of the facts. According to Singh, the Board applied the wrong standard—i.e., applying our standard to the BIA legal conclusions and substantial evidence. ***Id.*** But that is incorrect for a few reasons. One, an agency does not need to write in-depth on every contention. *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002). Second, the Board's decisions reflect its appropriate *de novo* analysis of the facts and case law when it reviewed the three incidents and correctly applied our case law.

Fourth, Singh says that the facts of his case are like those in *Blanco v. Att'y Gen.*, 967 F.3d 304 (3d Cir. 2020). The facts of *Blanco* are, relatively speaking, worse than the facts here and those facts do not compel the agency to conclude in favor of Singh. In *Blanco*, police officers kidnapped, beat, and threatened to kill the petitioner and his family. *Id.* at 313. The police had previously killed other political activists. *Id.* Even after the

11

petitioner escaped, the police continued to pursue him from place to place for over a year. *Id.* Those facts are considerably more severe than receiving an anonymous, threatening phone call and receiving minor injuries from two assaults that lasted less than two minutes each.

Fifth, Singh contends that the Board did not consider the Punjabi police's prior unwillingness to protect him from attacks by Badal party members. According to Singh, the police also threatened to arrest him based on trumped-up drug charges if he reported any other assaults to the police. Yet, as Singh acknowledges, the Badal party is no longer the reigning faction, and he has not pointed to any objective evidence to substantiate his claim that the BJP, the current ruling party in India, is in any way allied or associated with Badal such that police would decline to protect him upon his return.

## V.  CONCLUSION

Singh has not satisfied his burden of showing an error in the agency's decision nor has he satisfied his burden that the record compels a conclusion contrary to the agency's factfinding. Therefore, we will affirm the Board's final order of removal.