**SWALLOW TURN MUSIC,**
**et al., Plaintiffs,**

v.

**Charles Henry WILSON, Defendant.**

**Civ. A. No. 1–93–CV–8.**

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 31, 1993.

Stacy Royce Obenhaus, Gardere & Wynne, Dallas, TX, for plaintiffs.

Frank A. Adams, Adams & Adams, Beaumont, TX, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SCHELL, District Judge.

CAME ON TO BE HEARD this day the plaintiffs' motion for summary judgment, and the court, after considering this motion and brief in support, the defendant's response to the motion, the affidavits submitted by the plaintiffs, the defendant's answers to discovery requests submitted by the plaintiffs, and the joint stipulations of facts, is of the opinion that the plaintiffs are entitled to judgment as a matter of law and their motion for summary judgment should be GRANTED.

### BACKGROUND

Plaintiffs hold copyrights for various songs. They have granted a nonexclusive right to license nondramatic public performances of their copyrighted songs to the American Society of Composers, Authors, and Publishers ("ASCAP"). Plaintiffs allege that defendant Charles Henry Wilson violated the copyright laws by causing unauthorized public performance of copyrighted songs at Charlie's Club, a tavern located at 8901 Highway 69 in Port Arthur, Texas.

Charlie's Club is a sole proprietorship owned and operated by Charles Henry Wilson. Mr. Wilson regularly presents performances of music for his patrons by means of live bands and a jukebox. Beginning in 1990, ASCAP contacted Mr. Wilson and informed him that unauthorized public performances of copyrighted music, such as those occurring at Charlie's Club, constituted violations of the copyright laws which subjected him to a risk of substantial liability. In the months that followed, ASCAP made a concerted effort to license Mr. Wilson. Despite both personal visits and numerous letters from ASCAP representatives, Mr. Wilson did not secure an ASCAP license. Finally, on September 11–12, 1992, ASCAP sent two covert investigators to Charlie's Club. After they paid admission to enter the bar, the agents took note of which songs were played, by whom, and at what times. Plaintiffs filed suit alleging that seven of the songs played—four by a live band,[1] and three by a jukebox[2]—were

---

1. In particular, "Louisiana Saturday Night," "Domino," "Kaw–Liga," and "Unchained Melody."

2. "Take It Easy," "One of These Nights," and "Fool Hearted Memory."

publicly performed without proper authorization in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Plaintiffs then filed a motion for summary judgment, and defendant untimely responded.

## JURISDICTION

Jurisdiction is based on 28 U.S.C. § 1338(a).

## PROCEDURAL STANDARD FOR SUMMARY JUDGMENT

The moving parties, Swallow Turn Music, et al., have the burden of showing that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *William v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may discharge its burden by showing to the court that there is an absence of evidence on an essential element of the nonmovant's case, on which the nonmovant would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets his burden, it is the nonmoving party's burden to submit sufficient probative "evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All evidence of the nonmovant is to be believed, and all reasonable inferences are to be drawn in the nonmovant's favor. *Id.* 477 U.S. at 253–57, 106 S.Ct. at 2513–14.

## LIABILITY UNDER THE COPYRIGHT LAWS

In an action for copyright infringement, the elements of proof are as follows:

(1) the originality and authorship of the compositions [3] involved;

(2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the composition involved in this action;

(4) that the compositions were performed publicly ...;

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.,* 712 F.Supp. 1257, 1259 (S.D.Tex.1989), *aff'd,* 915 F.2d 1567 (5th Cir. 1990).

The defendant stipulates that the plaintiffs are the owners of valid copyrights in the musical compositions in question. (Letter from Plaintiffs' Counsel Obenhaus to Defendant's Counsel Adams, signed and adopted by Adams on June 8, 1993). The court finds that this stipulation is prima facie evidence of the plaintiffs' compliance with Title 17 of the United States Code. These stipulations establish the first three elements of copyright infringement: originality and authorship of the compositions, compliance with the requirements to secure a copyright, and plaintiffs' ownership of the copyrights of the compositions. The stipulations make it clear that there are no material issues of fact concerning these elements of the plaintiffs' claim.

The fourth requirement, that the compositions were performed publicly, is established by the affidavits of Steve Gant and Jim Cassanova and the joint stipulations contained in the Joint Final Pre-trial Order at No. 10. Messrs. Gant and Cassanova are investigators for ASCAP. The affidavits show that both Mr. Gant and Mr. Cassanova have sufficient experience in identifying particular songs, that they went to Charlie's Club on the evening of September 11, 1992 and early morning of September 12, 1992, that they paid admission to enter the premises as regular customers would,[4] and that several

---

**3.** "Compositions" refer to the musical compositions contained in schedule A of the plaintiffs' original complaint.

**4.** Unlike the 1909 Copyright Act, the 1976 Copyright Act does not require that the infringing musical performances be "for profit" for liability to attach. 17 U.S.C. § 106(4); *but see* 17 U.S.C.

songs, including the ones sued upon, were performed at particular times by either the band or a jukebox. The affidavits are consistent and reliable on their face, made upon personal knowledge, and sworn to before a notary public. The stipulations were signed by both counsel for plaintiffs and defendant. The court finds that this uncontroverted summary judgment evidence is sufficient to satisfy the fourth requirement.

Finally, the fifth inquiry is whether defendant received permission from any of the plaintiffs or their representatives for the performance of the songs in question. Mr. Wilson admits that no plaintiff in the lawsuit gave him permission to publicly perform the songs in question, and that at the applicable time period he knew neither he nor Charlie's Club was licensed by ASCAP for the performance of ASCAP members' copyrighted music.[5] Furthermore, the sworn affidavit of Page Carter, the Houston District Office Manager for ASCAP, shows that Mr. Wilson never received a license (or permission) to play the songs in question. This uncontroverted evidence establishes the fifth element.

Since all five elements for copyright infringement have been satisfied, this court finds that the plaintiffs have met their summary judgment burden on the issue of liability for copyright infringement.

Because the movants have met their burden, the burden shifts to Mr. Wilson to show that summary judgment should not be granted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2252–53, 91 L.Ed.2d 265 (1986). Mr. Wilson must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Mr. Wilson's own stipulations and admissions establish the plaintiffs' case conclusively. Moreover, Mr. Wilson provides no evidence refuting the plaintiffs' case in chief. Therefore, the court concludes that Mr. Wilson violated the copyrights of all seven songs which are the basis of suit.

## PERSONAL LIABILITY OF THE PROPRIETOR

Mr. Wilson claims he did not know that the band "Walter Allen and Flash Back" was not licensed to play the songs in question.[6] Mr. Wilson further contends that the band contractually agreed not to perform any

§ 110(4) (exempting certain noncommercial performances).

5. It should be noted that the Admissions by defendant Wilson appear to be contradictory. This contradiction is nondispositive. The pertinent portions of Defendant's Answers to Plaintiffs' Second Set of Interrogatories and Plaintiffs' First Set of Admissions appear as follows:

> REQUEST FOR ADMISSION NO. 6:
> In September 1992, the defendant was licensed by ASCAP, the American Society of Composers, Authors and Publishers, for the public performance of ASCAP members' music at Charlie's Club.
> ANSWER:
> Admitted.

> REQUEST FOR ADMISSION NO. 10
> In September 1992, the defendant knew that neither he nor Charlie's Club was licensed by ASCAP for the performance of ASCAP members' copyrighted music at Charlie's Club.
> ANSWER:
> Defendant admits that he was aware that neither he nor Charlie's Club was licensed, however, he was unaware that the band was unlicensed also.

The apparently incongruous questions were correctly reprinted by Mr. Wilson as originally appeared in Plaintiffs' First Request for Admissions and Second Set of Interrogatories to Defendant. It would seem that Plaintiffs' made a typographical error in propounding Admission No. 6, and that Mr. Wilson gave the question its *expected* meaning in answering. This incongruity does not affect the outcome of this Motion. Patently inconsistent requests for admissions are permissible. Anything admitted is deemed conclusively true. Fed.R.Civ.P. 36(b). Thus, if two admissions are contradictory, then logically either may be used against the person answering the admission. Here, Mr. Wilson's admission that he *knew* he did not have an ASCAP license in September 1992 necessarily entails an admission that he did not, in fact, have an ASCAP license in September 1992. This admission is conclusively established. *See also* Stipulations in Joint Final Pre-Trial Order No. 9 (Mr. Wilson refused to execute an ASCAP license for Charlie's Club).

6. The court is not presented with the issue of whether Mr. Wilson would be required to have an ASCAP license for his establishment even if the performing band had their own ASCAP license. *See Virgin Music, Inc. v. Nathaniel's, Inc.,* Civ. A. No. 83–1356, 1984 WL 22064, at *1 n. 1 (W.D.Pa. March 7, 1984).

materials which they were not authorized to perform. As such, he claims that with respect to the four songs played by the band, he did not violate the copyright laws.[7]

■■■ Mr. Wilson's contentions do not release him from liability for the infringements. All participants in copyright infringement are jointly and severally liable as tortfeasors. *Fermata,* 712 F.Supp. at 1262; *Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 554 (2d Cir.1972). If a defendant has a direct financial interest in the infringing activity and has the right and ability to supervise the activity which causes the infringement, then he should be held vicariously liable. *Charles Deitcher Prods., Inc. v. Milano Restaurant,* 21 U.S.P.Q.2d 1877, 1991 WL 327435 (E.D.Tex. 1992) (holding corporate officer liable who had a financial interest in the infringing activity and the right and ability to supervise the infringing activity even if the officer had no knowledge that infringing performances were occurring), *aff'd,* 1992 Copyright L.Dec. (CCH) para. 26,990 (5th Cir.1992) (appellate opinion not for publication); *Crabshaw Music v. K–Bob's of El Paso, Inc.,* 744 F.Supp. 763 (W.D.Tex.1990) (holding absentee owner liable); *Keca Music, Inc. v. Dingus McGee's Co.,* 432 F.Supp. 72 (W.D.Mo.1977). The defendant cannot escape liability by instructing the performers not to play copyrighted music, or even by inserting a provision to that effect into the performers' contract. *Cass County Music Co. v. Kobasic,* 635 F.Supp. 7 (W.D.Mich.1984) (instruction); *Keca,* 432 F.Supp. at 74–75 (instruction); *Shapiro, Bernstein & Co. v. Veltin,* 47 F.Supp. 648, 649 (W.D.La.1942) (contract). The fact that the hired performers are mere independent contractors will not absolve the defendant from liability. *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assn., Inc.,* 554 F.2d 1213, 1214–1215 (1st Cir.1977). Mr. Wilson admits that he received income from the operation of Charlie's Club in September 1992. His 1992 tax return, submitted as part of his discovery responses and referenced as an answer to a request for admission, shows that he owned the club at the time of the copyright violations. As sole proprietor, Mr. Wilson had a financial interest in the infringing activity and the right and ability to supervise the infringing activity. Therefore, he is liable for each of the seven infringements.

## DAMAGES

The plaintiffs are seeking statutory damages, injunctive relief, and costs including attorneys' fees.

### Statutory Damages

■■■ Under the Copyright Act of 1976, a copyright owner who has proved an infringement may elect, before final judgment, to receive "statutory damages" instead of his actual damages and the infringer's profits. 17 U.S.C. § 504(c)(1). Statutory damages may range from $500 to $20,000, as the court considers just, for all infringements involved in the action, with respect to any one work. 17 U.S.C. § 504(c)(1). Where the suit involves infringement of more than one separate and independent work, minimum statutory damages for each work must be awarded. *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 236 (5th Cir.1988). If the court finds that the infringement was committed willfully, the court "in its discretion" may increase the statutory award to no more than $100,000 per work infringed. 17 U.S.C. § 504(c)(2).

### *Willful Infringement*

■■■ The plaintiffs contend that Mr. Wilson willfully infringed upon their copyrights. The Fifth Circuit has defined willful infringement as infringement wherein a defendant "knows his actions constitute an infringement...." *Broadcast Music,* 855 F.2d at 236. Evidence that notice was given to a copyright infringer before the infringement occurred is persuasive evidence of willfulness. *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir.1991). ASCAP sent Mr. Wilson fifteen letters from July 1990 to August 1992 informing him that his conduct violated the copyright laws and of-

---

**7.** In the alternative, Mr. Wilson claims that he did not "willfully" infringe on the plaintiffs' copyrights with respect to the four songs sung by the live band. This contention is addressed at page 579.

fering him an ASCAP license for Charlie's Club. Aff. of Carter para. 7. These letters informed Mr. Wilson of his responsibilities under the law, and the possible penalties for violations of the law. Mr. Wilson admits that ASCAP offered him a license, yet he did not purchase one. Def.'s Answer Admis. No. 9; Aff. of Carter paras. 8, 9. Mr. Wilson also admits that in September 1992 he knew that he had not sought permission from any copyright owners for public performances of copyrighted materials, and he admits that he knew that neither he nor Charlie's Club was licensed for performances of ASCAP members' copyrighted music. Def.'s Answer Admis. Nos. 10–11. Mr. Wilson's decision to present performances of copyrighted music without permission from the copyright owners and without a license from ASCAP was made knowingly, and the public performances of plaintiffs' music on September 11th and 12th, 1992, at Charlie's Club constituted willful infringement of plaintiffs' copyrights in disregard of the copyright laws. This court finds from the answers to discovery requests and affidavits submitted by the plaintiffs that the defendant's acts constitute willful infringement.

■ Furthermore, Mr. Wilson's defense that he did not know that the band was unlicensed and that he had a contract with the band requiring them to not play unauthorized songs cannot absolve him from a finding of willful violation due to ASCAP's repeated notice to him of his responsibilities under the copyright laws. *See Charles Deitcher*, 21 U.S.P.Q.2d at 1879 (defendant who, for purposes of summary judgment, did not know of a particular infringing activity nonetheless held liable for *willful* violation of the copyright laws due to his repeated notice of copyright protection); *see also Rare Blue Music, Inc. v. Guttadauro*, 616 F.Supp. 1528 (D.C.Mass.1985) (finding a willful violation even though defendant thought that a licensed independent contractor relationship insulated him from liability because defendant received notice of his legal responsibilities and he failed to inquire further as to his own obligations under the Copyright Act). It can be said that there are two kinds of willfulness: (1) knowing that a particular performance is a copyright infringement, and

(2) knowing that the normal course of business involves a pattern of repeated copyright infringements. Should the latter situation occur, then "willfulness" proven as to the course of business will suffice for "willfulness" for any particular occurrence of copyright infringement. A proprietor who has been repeatedly warned that a course of conduct violates the law should take responsibility in seeing that it does not happen again. *Rare Blue Music*, 616 F.Supp. at 1531. He cannot shield himself by a willing veil of ignorance woven by a series of contracts and agreements between himself and his employees, servants, and independent contractors. Mr. Wilson was warned that his usual business practices violated the copyright laws as early as 1990. He received numerous telephone calls and letters warning him that his usual business practices violated the copyright laws. After so much notice over so much time, Mr. Wilson cannot claim that he did not "know" that the particular September 11–12, 1992 performances were not copyright infringements. Mr. Wilson will be charged with constructive knowledge of the infringing performances. Therefore, the court finds that Mr. Wilson's mental state was knowing and willful as to all seven of the infringing performances, including those performed by "Walter Allen and Flashback."

### Amount of Damages

■ Under 17 U.S.C. § 504(c), this court cannot "premise its award on a number of infringements not proved by admissible evidence." *Broadcast Music*, 855 F.2d at 237. Damages may not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *Id., citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979). In the case at bar, however, the plaintiffs have provided this court with sufficient summary judgment evidence to establish both the number of infringements and the amount of punishment to award for each. As indicated earlier, the stipulations and the detailed affidavits of Steve Gant and Jim Cassanova establish the number of infringements. Both men contemporaneously recorded the time and nature of the infringements as they occurred. The

affidavit of Page Carter, the defendant's response to the summary judgment motion, and the discovery responses set forth facts weighed by the court in affixing damages, such as the degree of willfulness. The summary judgment evidence is sufficient to establish that Mr. Wilson infringed the plaintiffs' copyrights seven times on September 11th and 12th, 1992, and is also sufficient to enable the court to affix the damages for such infringements using due discretion.

Plaintiffs have elected to pursue statutory damages rather than actual damages. Seven willful infringements have been found, and each infringement carries a statutory penalty of at least 500 dollars, and no more than 100,000 dollars. Plaintiffs have asked for $2,500 per infringement, for a total of $17,500. Compared to the total penalty range of $3,500 to $700,000, the $17,500 penalty requested by plaintiffs appears quite reasonable.[8] Moreover, the summary judgment evidence presented by the plaintiffs to this court, including the evidence of copyright infringements and willfulness, is sufficient for the court to find, as it does, that an award of $2,500 per infringement is just in this case. This amount serves both to recompense plaintiffs[9] and to deter future violations of the copyright laws. See F.W. Woolworth v. Contemporary Arts, 344 U.S. 228, 232–33, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952) (stating that prior version of the statutory penalty should compel restitution of profit, reparation of injury, and discourage wrongful conduct). Accordingly the court finds that the plaintiffs are entitled to summary judgment for $17,500 in statutory damages.

### Injunctive Relief

This court has the power to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). While the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists. *Fermata Intern. Melodies v. Champions Golf Club*, 712 F.Supp. 1257 (S.D.Tex.1989), *aff'd*, 915 F.2d 1567 (5th Cir.1990). While Mr. Wilson claims that he does not continue to present unauthorized public performances of ASCAP members' copyrighted music, based on Mr. Wilson's past recalcitrance the court finds that a continuing threat of copyright infringement exists.

While some courts have only enjoined performance of the particular songs sued upon, e.g., *Little Mole Music v. Spike Investment, Inc.*, 720 F.Supp. 751 (W.D.Mo.1989), other federal courts have enjoined defendants from publicly performing any ASCAP members' music without permission from the copyright owner or a license from ASCAP. See, e.g., *Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815 F.Supp. 511, 516 (D.P.R.1993); *Ram's Horn Music v. Foundry Entertainment, Inc.*, 1993 Copyright L.Dec. para. 27,066, at 26,244, 1992 WL 125344 (E.D.La.1992). The latter approach seems appropriate for a willful violation of the copyright laws. Piecemeal prohibitions against continued, knowing violations of the law squander scarce judicial resources. This approach also reflects the practical realities of copyright enforcement. Due to Mr. Wilson's willful violation of the copyright laws, the court finds that plaintiffs are entitled to an injunction prohibiting Mr. Wilson and those acting on his behalf from publicly performing any ASCAP members' copyrighted music without proper authorization.

### Costs and Attorneys' Fees

Title 17 U.S.C. § 505 allows the court to award costs and attorneys' fees to the party prevailing on a copyright claim. Although attorneys' fees are awarded in the court's discretion, they are the rule rather than the exception in copyright infringement actions, and should be routinely awarded.

8. Indeed, even if the infringements were not willful and the punishment range was appropriately lower, the court would consider $2,500 per infringement just in the case at bar.

9. If Charlie's Club had been properly licensed for public performances of ASCAP members' copyrighted music beginning in July 1990, the date of Mr. Wilson's first warning, and continuing through December 31, 1993, Mr. Wilson would have paid $4,919.66 in ASCAP license fees. Aff. of Carter para. 11; Stipulations in Joint Final Pre-Trial Order No. 16.

*Micromanipulator Co., Inc. v. Bough,* 779 F.2d 255, 259 (5th Cir.1985). Based on the preceding decisions and the evidence before the court, this court will grant reasonable costs and attorneys' fees upon submission of affidavits setting forth plaintiffs' costs and attorneys' fees. This court is required to use the reasonableness factors of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) in awarding statutorily authorized attorneys' fees. *Micromanipulator,* 779 F.2d at 259. Accordingly, the court will consider the *Johnson* factors and make pertinent findings once affidavits have been submitted.

It is, therefore, **ORDERED** that the plaintiffs' motion for summary judgment is hereby **GRANTED;** and it is further

**ORDERED** that the plaintiffs are awarded judgment against defendant Charles Henry Wilson for statutory damages in the amount of $17,500.00; and it is further

**ORDERED** that plaintiffs, by and through their counsel of record, submit affidavit proof of costs and attorneys' fees within ten (10) days from the date of the court's summary judgment order. Defendant Charles Henry Wilson has ten (10) days, computed under the normal time calculation rules, in which to respond to plaintiffs' submitted affidavits. It is further

**ORDERED** that Charles Henry Wilson, his agents, his servants and employees, and all others acting in concert with him, are permanently enjoined and prohibited from presenting public performances of ASCAP members' copyrighted music without permission from the copyright owners or a license from ASCAP, their performing rights licensing society, unless some particular exception in the Copyright Act of 1976, as amended from time to time, applies to a particular performance.