EMI APRIL MUSIC, INC., Gone Gator Music, EMI Virgin Music, Inc., Floated Music, Milksongs and Hideout Records and Distributors, Inc. (Gear Publishing Division), Plaintiffs,

v.

Randolph Martin WHITE, Defendant.

Action No. 2:08cv332.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 22, 2009.

Michael T. Zugelder, Esq., for Plaintiff.

### *OPINION & ORDER*

MARK S. DAVIS, District Judge.

This matter is before the Court on Plaintiffs' Motion for Default Judgment and Injunctive Relief, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.[1] The defendant has filed no response, and the matter is ripe for decision.

### I. Facts and Procedural History

Plaintiffs EMI April Music, Inc., Gone Gator Music, Inc., Floated Music, Milksongs and Hideout Records and Distributors, Inc. (Gear Publishing Division) (col-lectively, "Plaintiffs") filed their Complaint on July 17, 2008, alleging three claims of copyright infringement against defendant Randolph Martin White ("Defendant"). Plaintiffs allege in their Complaint that they are owners of copyrights in three musical works ("I Won't Back Down," "Interstate Love Song," and "The Fire Down Below") that were publicly performed on August 10–11, 2007 without their permission at Randzz restaurant in Suffolk, Virginia, and that such restaurant is owned and controlled by Defendant. (Compl. ¶¶ 2–6, Docket No. 1.) Plaintiffs further allege that, despite such warnings to discontinue his knowing and intentional copyright infringement, Defendant threatens to continue such infringing performances. (Compl. ¶¶ 9, 11, Docket No. 1.) The Complaint requests a permanent injunction against further infringement, statutory damages, attorney's fees and costs.

The Defendant was served with a summons on October 2, 2008, but he has failed to plead or otherwise defend this action. Plaintiffs filed their motion and supporting brief seeking default judgment on February 12, 2009. On February 18, 2009, the Clerk entered default as to the Defendant.

In support of their motion for default judgment, Plaintiffs have submitted an affidavit from Douglas Jones, Manager of Litigation Services in the General Licensing Department at the American Society of Composers, Authors and Publishers, also known as "ASCAP." (Jones Aff., Attach. 4, Docket No. 11.) Jones represents in the affidavit that "ASCAP is an unincorporated membership association whose over 330,000 members write and publish musical compositions," with each member

---

**1.** On April 28, 2009, Plaintiffs filed a second "Motion for Default Judgment." However, this motion merely updates the Plaintiffs' costs associated with this action. The affidavit attached to the motion indicates that the Plaintiffs seek reimbursement for costs in the amount of $417.59, in addition to the injunctive relief, statutory damages, and attorney's fees previously sought in the prior motion.

"grant[ing] to ASCAP a non-exclusive license to authorize public performances of the member's copyrighted songs." (*Id.*) Jones' affidavit further states that, "[o]n behalf of all its members, ASCAP licenses the right to perform publicly all of the hundreds of thousands of copyrighted songs in the ASCAP repertory" to various music users, including "television networks and stations, radio networks and stations, restaurants, nightclubs, hotels, and many other kinds of music users." (*Id.*)

Jones also states in his affidavit that Plaintiffs are members of ASCAP and that the three songs listed in the Complaint were part of the ASCAP inventory on August 10–11, 2007 when they were performed at Randzz Restaurant & Pub in Suffolk, Virginia. Jones recounts in detail how, as early as October of 2006, ASCAP notified Defendant of the need for permission, or a license, if copyrighted music was performed at his establishment. Jones also describes how ASCAP offered a license to the Defendant on numerous occasions. The affidavit reviews the letters, telephone conversations and personal visits of ASCAP representatives notifying Defendant that he needed permission to have copyrighted songs legally performed at his establishment, and attaches copies of such letters and documents reflecting the substance of conversations and visits. Specifically, the affidavit includes copies of letters sent to Defendant on September 12, 2006, September 26, 2006, October 10, 2006, December 28, 2006, January 17, 2007, April 18, 2007, June 26, 2007, June 29, 2007, and August 30, 2007. Furthermore, in the telephone contact summary of October 10, 2006, it is reported that when ASCAP representative Nicole McGee spoke to Defendant and explained his obligation as the owner of the establishment to assure that copyrighted songs were not performed without permission, he indicated that he thought the bands performing at his estab-

lishment should pay for the licenses, and allegedly said he would take his chances on a lawsuit. The telephone contact summary further reflects that Defendant was advised to consult an attorney, and that Defendant said he would do so. Numerous other 2006 and 2007 telephone contact and personal visit summaries attached to the affidavit reflect messages left for Defendant to contact ASCAP, as well as conversations with others working at Defendant's establishment.

The affidavit and attachments reflect that, despite all of these efforts by ASCAP to protect its members' copyrighted music, Defendant continually refused to obtain a license from ASCAP or gain permission from the Plaintiffs themselves. Jones indicates that after it was clear that Defendant would not obtain a license to have copyrighted music performed at his establishment, ASCAP arranged for independent investigator Mark Eanes to visit Defendant's establishment on August 10–11, 2007 to determine whether ASCAP members' music was being performed. The Mark Eanes affidavit and investigative report attached to the Jones affidavit reflect that Eanes visited the establishment on August 10, 2007 and stayed into the early morning hours of August 11, 2007. In his report, Eanes submitted notes taken contemporaneously with the public performance by a band of the three songs, as well as diagrams he prepared reflecting the layout of the establishment and the presence of a jukebox that was being played. Eanes states that he recognized the three songs listed above and that such songs were performed by the band while he was at the establishment.

Because this investigation revealed that Defendant was allowing unauthorized performances of copyrighted music in his establishment, ASCAP sent a letter to Defendant dated August 30, 2007. The letter

informed him that since ASCAP had received no response to its offers of a license, it engaged an independent investigator to visit his establishment, and that as a result of such visit "we have evidence of unauthorized performances of ASCAP members' copyrighted musical works given at your establishment." (Jones Aff., Attach. 4, Docket No. 11.) The letter offers to resolve the matter, but warns that failure to resolve it will result in referral to ASCAP attorneys. The Defendant did not thereafter obtain a license from ASCAP, and Plaintiffs filed this copyright infringement suit on July 17, 2008.

## II. Discussion [2]

### A. Origins of Copyright

Copyright is the body of law that deals with the ownership and use of works of literature, music, and art. Robert A. Gorman, *Copyright Law* 1–2 (2d ed. 2006). The antecedents of our copyright law date back to English law of the sixteenth century. As the United States Court of Appeals for the Fourth Circuit noted in *Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 974 (4th Cir.1990), "in sixteenth-century England, the Crown granted to the Stationers' company the exclusive right to publish and print all published works (apparently to enable censorship of Protestant materials)," and in "the early 1700s, the Stationer's Company [sic] petitioned Parliament to recognize that these rights inured to it in perpetuity." However, instead of granting such petition, the "Parliament passed the Statute of Anne (1709–10), the first

known copyright legislation." *Id.* (citing A. Latman, *The Copyright Law: Howell's Copyright Law Revised and the 1976 Act* 2–3 (5th ed. 1979), R. Bowker, *Copyright: Its History and Its Law* 21–23 (1912)). The Statute of Anne gave authors the sole right of publication for up to twenty-eight years. *Id.* at 974–75. "The Statute of Anne, and the copyright laws later adopted in the former colonies, set the stage for the Copyright and Patent Clause of the [United States] Constitution and for the enactment by the first Congress in 1790 of the first federal statutes governing copyrights and patents." Gorman, *supra,* at 2.

With the stage so set, the framers of our Constitution continued the English development of intellectual property law by specifically giving Congress the power to create copyright and patent laws. *Reynolds,* 911 F.2d at 975. Article I, section 8, clause 8 of the United States Constitution provides:

> [The Congress shall have power] To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

As the Fourth Circuit has noted, the material explaining the intention of the framers is limited, though a comment in *The Federalist* papers [3] indicates that the public policy behind the grant of copyright and patent powers is essentially the same:

---

**2.** Because Defendant has made no appearance, is apparently not represented by counsel regarding this matter, and has indicated to ASCAP representatives that he believes the obligation to obtain permission or a license to perform copyrighted music is for the live performers, not the establishment owner/operator, the Court here provides a thorough discussion of the law supporting Plaintiffs' motion.

**3.** *The Federalist* papers were a series of essays penned in 1787 and 1788 by Alexander Hamilton, James Madison, and John Jay, explaining and defending the newly-drafted Constitution in anticipation of the debates that would take place in the various state conventions deciding whether to ratify such Constitution.

The utility of this power will scarcely be questioned. The copyright of authors has been solemnly adjudged in Great Britain to be a right of common law. The right to useful inventions seems with equal reason to belong to the inventors. The public good fully coincides in both cases with the claims of individuals. *Reynolds,* 911 F.2d at 975 (citing *The Federalist,* No. 43 at 279 (J. Madison 1787–88) (Mod.Lib. ed. 1941)).

■ The United States Supreme Court recently observed that "copyright's purpose is to *promote* the creation and publication of free expression." *Eldred v. Ashcroft,* 537 U.S. 186, 219, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003). The Court went on to note that "[t]he Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Id.* (citing *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 558, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). Stated another way, the "philosophy behind copyright . . . is that the public benefits from the efforts of authors to introduce new ideas and knowledge into the public domain," and, in order to "encourage such efforts, society grants authors exclusive rights in their works for a limited time." *Reynolds,* 911 F.2d at 975.

### B.  Copyright Statute

■ It is against this backdrop that Congress enacted the first copyright statute in 1790, and has repeatedly affirmed and revised that statute. As it exists today, the Copyright Act, 17 U.S.C. § 101 *et seq.,* provides a copyright owner the "exclusive rights to do and to authorize any of the following: . . . (4) in the case of . . . musical . . . works, . . . to perform the copyrighted work publicly." 17 U.S.C. § 106(4). "This [statutory] framework [also] enables the owner of the copyright to assign the licensing of public performances to others, such as ASCAP, on terms amenable to the copyright owner." *EMI Mills Music, Inc. v. Empress Hotel,* 470 F.Supp.2d 67, 72 (D.P.R.2006); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1292 (D.R.I.1982).

### C.  Infringement

The Copyright Act provides that anyone who violates any of the exclusive rights of the copyright owner, such as the music rights outlined above, is an infringer of the copyright. 17 U.S.C. § 501(a). Plaintiffs are generally entitled to various remedies for infringement, including injunctions, monetary damages, costs and attorney's fees. 17 U.S.C. §§ 502, 504, 505.

■ In order to prove copyright infringement, a plaintiff must show (1) that it owned a valid copyright, and (2) that the defendant copied original elements of plaintiff's copyrighted work. *Trandes Corp. v. Atkinson Co.,* 996 F.2d 655, 660 (4th Cir.1993); *Odnil Music Ltd. v. Katharsis LLC,* No. S–05–0545, 2006 WL 2545869, at *4–5, 2006 U.S. Dist. LEXIS 65813, at *11–12, 2006 Copy. L. Dec. (CCH) P 29,222 (E.D.Cal.2006) (in the music performance context, the requirements have been stated as follows: 1) originality and authorship of the compositions involved, 2) compliance with the formalities required to secure a copyright, 3) plaintiffs ownership of the copyright, and 4) defendant's public performance of the compositions). Therefore, one who publicly performs copyrighted music without permission from the copyright owner thereby infringes the copyright. Plaintiffs have pled such facts in their Complaint. Plaintiffs allege that they "are the owners of the copyrights," and that they "received from the Register of Copyrights a Certifi-

cate of Registration." (Compl. ¶¶ 3, 8, Docket No. 1.) Such allegations satisfy the first element. Plaintiffs also allege that Defendant infringed their copyrights by "giving public performances of the [Plaintiff's] compositions on Defendant's premises, for the entertainment and amusement of the patrons attending said premises...." (Compl. ¶ 9, Docket No. 1.)[4] Such allegations satisfy the second element.

■ Defendant was served with the Summons and Complaint containing Plaintiffs' allegations and has failed to respond. He has not filed an Answer to the Complaint, or any other pleading, with the Court. As a result of such failure to respond, the Clerk entered default against the Defendant pursuant to the provisions of Rule 55(a) of the Federal Rules of Civil Procedure. Where a defendant is in default, as here, the facts set forth in the plaintiff's complaint are deemed admitted if the plaintiff's complaint sets forth a proper claim. *TR–Equipement, Ltd. v. M12International,* No. 1:08cv226, 2008 WL 4813327, at *3 (E.D.Va.2008) (citing *GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F.Supp.2d 610, 612 n. 3 (E.D.Va.2003)); Fed.R.Civ.P. 8(b)(6) (providing that allegations, other than as to damages, are admitted if responsive pleadings are required and allegations are not denied). Accordingly, because Plaintiffs' Complaint sets forth a proper claim, and because Defendant is in default, the facts in Plaintiffs' Complaint are deemed admitted. It is now for this Court to determine whether a default judgment should be entered.

### D. Default Judgment

#### 1. discretion

■ Rule 55(b)(2) provides that, where a claim is not for a sum certain, the plaintiff must apply to the court for a default judgment. Fed.R.Civ.P. 55(b)(2). Plaintiffs assert that their claims are not for a sum certain as such damage cannot be accurately computed. (Compl. ¶ 13, Docket No. 1.) However, the inquiry does not end there. A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right. *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.,* 486 F.Supp.2d 496, 502 (E.D.Pa.2007). Therefore, in determining whether to enter default judgment, the Court may exercise its discretion by considering many factors from the record. *Overcash v. United Abstract Group, Inc.,* 549 F.Supp.2d 193, 195 (N.D.N.Y.2008) (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 2685).

#### 2. factors

Plaintiffs have applied for a default judgment, and they have attached detailed affidavits and exhibits in support of such motion for default judgment. *Disney Enters. v. Farmer,* 427 F.Supp.2d 807, 814 (E.D.Tenn.2006) (noting use of admitted

---

4. While there are exemptions in the Copyright Act that permit restaurants and similar establishments to play music from radios for their customers in certain narrowly-defined circumstances, we are not dealing with that situation here. *See* 17 U.S.C. § 110(5); *Cass County Music Co. v. Muedini,* 55 F.3d 263, 266 (7th Cir.1995). There are also limited exemptions in the Copyright Act for nonprofit performance of music. 17 U.S.C. § 110(4). However, "a profit-making enterprise which publicly performs copyrighted musical compositions is deemed to do so for profit." *Major Bob Music v. Stubbs,* 851 F.Supp. 475, 480 (S.D.Ga.1994). Furthermore, "an enterprise is considered to be 'profit-making' even if it never actually yields a profit." *Id.* There is no suggestion in the record before the Court that Defendant was operating a nonprofit establishment.

facts and affidavits is appropriate in copyright infringement default context). The Court must now exercise its discretion and consider factors reflected in such record. The factors that the Court may consider include "the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; ... whether the grounds for default are clearly established or are in doubt ....[;] how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2685.

█ First, the Court notes that while the amount of money requested ($13,500.00) is likely significant for the average restaurant operator, it is not such that it would shock the conscience if it were entered by default judgment. Nor can the injunction request, and request for attorney's fees and costs, be considered shocking to the conscience. Second, based on the record before the Court, and as explained more fully below in the discussion of vicarious liability, it does not appear that there are material issues of fact in dispute, or issues of such substantial public importance that they should not be decided by default. Third, the default here is not merely "technical" in nature. Defendant has entirely ignored the proceedings, not merely missed a deadline by a few days. Fourth, Plaintiffs have been substantially prejudiced by the delay involved, having tried to work with Defendant since 2006 to address his infringing activities, and having waited from the time of AS-CAP's last warning letter on August 30, 2007 until July 17, 2008 to file this Complaint. Fifth, the grounds of default have been clearly established here—they are not in doubt. Sixth, while the relief requested (and the amount awarded) is significant for the average restaurant owner, it is not harsh when one considers Defendant's numerous opportunities to remedy the problem, his willful refusal to obtain a license in the face of infringement, and his refusal to participate in these proceedings. Finally, there is no indication here that the default was caused by any good-faith mistake or excusable neglect on the part of the Defendant.

### 3. vicarious liability

█ The Court found above that there are no material issues of fact in dispute. Indeed, it would be difficult for there to be any such dispute since Defendant has made absolutely no effort to defend or make an appearance at any stage of this litigation, despite having been personally served with the Summons and Complaint on October 2, 2008. Nevertheless, because Defendant reportedly asserted to an AS-CAP representative that he believed the responsibility for obtaining permission, or a license, to perform copyrighted musical material rests with bands that perform at his establishment, the Court will address that issue.

█ There seems to be no dispute among courts that a person can, in certain circumstances, be found to have infringed a copyright based on the acts of another. *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 125 S.Ct. 2764, 2776, 162 L.Ed.2d 781 (2005) (recognizing secondary liability under copyright act); *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 435, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (noting existence of vicarious liability in the copyright context despite absence of express language in copyright statute); 17 U.S.C. § 106 (copy-

right owner has exclusive right "to authorize" use).

One category of such secondary liability is vicarious liability. Vicarious liability generally exists when two elements are present. *Nimmer on Copyright,* § 12.04[A][2] (2008). First, a defendant must possess the right and ability to supervise the infringing conduct. Second, the defendant must have "an obvious and direct financial interest in the exploitation of copyrighted material." *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963); *see Pinkham v. Sara Lee Corp.,* 983 F.2d 824, 834 (8th Cir.1992). Each element must be demonstrated to render a defendant vicariously liable. *Broad. Music, Inc. v. Behulak,* 651 F.Supp. 57, 60 (M.D.Fla.1986). While lack of knowledge that the primary actor is actually engaged in infringing activity is not a defense where both elements are satisfied, *Shapiro,* 316 F.2d at 307–08, absence of scienter may affect the remedies available. *See Nelson–Salabes, Inc. v. Morningside Dev., LLC,* 284 F.3d 505, 517 (4th Cir.2002) (while related defendants are not always jointly liable for total profits realized by all defendants, but are rather individually liable for their own respective profits, defendants engaged in joint venture or similar enterprise may be jointly liable).

In this case, the facts taken as admitted from the Complaint show that Defendant owns and/or operates the establishment where the copyright infringement took place. Furthermore, the Jones affidavit corroborates the facts already admitted by virtue of Defendant's failure to respond to the Complaint. Therefore, the record before the Court establishes that the Defendant possessed the right and ability to supervise the infringing conduct. The facts before the Court, as admitted, also reflect that the infringing music was being performed at Defendant's restaurant/pub for entertainment purposes, thus giving Defendant an obvious and direct financial interest in the exploitation of copyrighted material. *Major Bob Music,* 851 F.Supp. at 480. Even when a restaurant proprietor instructs band members not to perform copyrighted music at his establishment, or inserts a provision to that effect in the band's contract, such proprietor cannot escape vicarious liability when he has a right to supervise and a financial interest in such performance. *Swallow Turn Music v. Wilson,* 831 F.Supp. 575, 579 (E.D.Tex.1993) (citing cases); *see Shapiro,* 316 F.2d at 308 (noting strict liability applicable in copyright context). Furthermore, the fact that hired performers are mere independent contractors will not absolve a proprietor from vicarious liability. *Wilson,* 831 F.Supp. at 579.

Defendant asserted to ASCAP that the performer has the sole responsibility to obtain permission or a license to perform copyrighted material. This argument is without merit. As Defendant was operating an ostensibly profit-making establishment, he had a financial interest in the infringing activity. *Major Bob Music,* 851 F.Supp. at 480. Furthermore, Defendant had the right and ability to supervise the infringing activity. Despite a year of repeated warnings that he could not permit performers to infringe copyrights of ASCAP members, when ASCAP's investigator visited the establishment, he found that Defendant was permitting a band to play infringing music. Furthermore, after such visit, when given the opportunity to remedy such infringement by responding to ASCAP, Defendant failed to do so. Therefore, his asserted defense to ASCAP finds no support in the law or the facts appearing on the record before the Court.

Because Plaintiffs' allegations contain all of the required elements for copyright infringement, because such facts are deemed admitted due to Defendant's failure to respond, and because all of the factors reviewed above militate in favor of entering default judgment for Plaintiffs, the Court **GRANTS** Plaintiffs' motion for entry of default judgment.

### E. Relief

#### 1. money damages

Plaintiffs seek statutory rather than actual damages. Under the Copyright Act, 17 U.S.C. § 504(c)(1) provides that a "copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." Furthermore, the statute allows recovery of damages "in a sum of not less than $750 or more than $30,000" for all infringements in the action. *Id.* In a case where the defendant has willfully violated the copyright, the Court "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The statute allows the Court, according to its discretion, to decide the amount of damages to be awarded. "In a case where a defendant's infringement is found to be willful, the act contemplates that the award may, in the judge's discretion, punish the wrongdoer." *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001, 1003 (E.D.Va.1985). Furthermore, "[s]tatutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct." *Graduate Mgmt. Admission Council v. Raju,* 267 F.Supp.2d 505, 511 (E.D.Va.2003). The Supreme Court of the United States has recognized the deterrent effect that statutory damages can have in copyright cases:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.

*F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952). Another court has stated the case more bluntly: "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Int'l Korwin Corp. v. Kowalczyk,* 665 F.Supp. 652, 659 (N.D.Ill.1987). Rather, the defendant must "be put on notice that it costs less to obey the copyright laws than to violate them." *Music City Music,* 616 F.Supp. at 1003.

Because of the important deterrent purposes served by statutory damages, in cases such as this courts have routinely awarded statutory damages in amounts that are between two and three times license fees. *Girlsongs v. 609 Indus., Inc.,* No. 07–cv–01776, 2008 WL 5396003, at *3, 2008 U.S. Dist. LEXIS 103796, at *8, 2008 Copy. L. Dec. (CCH) P 29,681 (D.Colo. 2008). Courts in this District have also awarded statutory damages above the minimum allowed by 17 U.S.C. § 504(c)(1). *See, e.g., Ctr. City Music v. Kisner,* No. 93–1959, 23 F.3d 400, 1994 WL 159769, at *2, 30 U.S.P.Q.2d (BNA) 1696 (4th Cir. 1994) (per curiam table decision) (affirming the district court's award of $2,250 per infringement); *Music City Music,* 616 F.Supp. at 1003 (following the suggestion of the plaintiffs and awarding statutory damages of $1,500 per infringement); *Broad. Music, Inc. v. Opticom, Inc.,* No. 3:91CV00381, 1992 WL 510894, at *5

(E.D.Va.1992) (awarding the plaintiffs $1,000 per infringement for a total of $11,000).

■ Among the factors that courts consider in determining the amount of a damages award are the following: expenses saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement. *Cross Keys Publ'g Co., Inc. v. Wee, Inc.*, 921 F.Supp. 479, 481 (W.D.Mich.1995). A court can also consider the goal of discouraging wrongful conduct. *F.W. Woolworth Co.*, 344 U.S. at 233, 73 S.Ct. 222.

Plaintiffs ask that the Court award $4,500.00 per infringement, for a total of $13,500.00. (Jones Aff., Attach. 4, Docket No. 11.) Jones represents in his affidavit that, if the Defendant had been properly licensed from October 2006 through the date the motion for default judgment was filed, the ASCAP licensing fee would have been approximately $4,508.13 (the license fee for 2009 is $1,501.20). (*Id.*) Plaintiffs describe the $4,508.13 as "profit" to Defendant. (*Id.*)

ASCAP repeatedly offered the Defendant a license, but he ignored the offers and continued to play copyrighted music without proper authorization. Given Defendant's blatantly willful conduct, and considering the licensing fee that would have applied at the time of infringement, an appropriate statutory damages award in this case is $3,500.00 per infringement (slightly more than two times the 2009 licensing fee), for a total of $10,500.00 (which is slightly more than two times the license fee "saved" of $4,508.13).

### 2. injunctive relief

■ Pursuant to 17 U.S.C. § 502(a), this Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Additionally, Rule 65(d) requires that every order granting an injunction set forth the reasons for its issuance and specifically detail its terms. In order to obtain a permanent injunction against copyright infringement:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, arc inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir.2007) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) for proposition that irreparable harm is no longer presumed in such cases). Even with such a showing, "whether to grant the injunction still remains in the 'equitable discretion' of the court." *Id.*; *see Music City Music*, 616 F.Supp. at 1003; *see also Phoenix Renovation Corp. v. Rodriguez*, 461 F.Supp.2d 411, 424 (E.D.Va.2006).

The Plaintiffs ask that, in light of Defendant's willful infringement and failure to participate in these proceedings, he be enjoined from performing any or all music in the ASCAP repertory, unless the Defendant has proper authorization. Since Plaintiffs have established that the Defendant has violated copyright laws and continues to violate copyright laws by unlawfully performing their copyrighted music compilations without a license, the Court will apply the four-part injunction test to the facts in the record.

### a. irreparable harm and adequate remedy at law

■ Plaintiffs allege in their Complaint that the acts of infringement "have caused and are causing great injury to the Plaintiffs, which damage cannot be accurately computed, and unless this Court restrains the Defendant from the further commission of said acts, said Plaintiffs will suffer irreparable injury, for all of which the said Plaintiffs are without any adequate remedy at law." (Compl. ¶ 13, Docket No. 1.) Plaintiffs assert in their brief that "[w]hen an infringement occurs, a copyright proprietor is entitled to an injunction prohibiting further infringing performances." (Br. in Supp. of Pl.'s Mot. for Default J. 5, Docket No. 11.) However, as explained above, the inquiry is not that simple. Since the Supreme Court's *eBay* opinion in 2006, district courts are required to apply the four factor injunction test rather than simply presuming that an injunction should issue upon proof of infringement. *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1211–14 (C.D.Cal.2007) (explaining that adoption of a presumption of irreparable harm would have the effect of shifting the burden of proof from plaintiff to defendants).

The Fourth Circuit addressed this issue post *eBay* in the context of a copyright infringement action based upon architectural plans. *Phelps & Associates*, 492 F.3d at 544. The infringer constructed a house by using the plaintiffs architectural plans without authorization. *Id.* The plaintiff requested that the court enter a permanent injunction prohibiting defendant from leasing or selling the house. The Fourth Circuit noted that "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Id.* Then, moving from the irreparable injury prong of the injunction test to the adequate remedy at law prong, the court noted that damages at law would not remedy the continuing existence of the architectural design in the house. *Id.* The court also commented that "[m]oreover, while the calculation of future damages and profits for each future sale might be possible, any such effort would entail a substantial amount of speculation and guesswork that renders the effort difficult or impossible in this case." *Id.* The court then concluded that the plaintiff architectural firm "most likely has satisfied the first two *eBay* factors." *Id.*

In this case, Plaintiffs have shown copyright infringement based upon a live band performing three copyrighted songs. The very nature of this kind of infringement suggests irreparable harm. Once a song has been played and heard, it is difficult to conceive of how such harm can be remedied—short of an effort to award damages. The Court also considers the fact that this is not a fact pattern involving a tangible item that might be retrieved or destroyed in order to remedy the copyright infringement. Music cannot be retrieved or destroyed once the public performance has taken place. The harm cannot be "repaired," which makes such harm irreparable. Furthermore, to the extent that continued public performance takes place of ASCAP copyrighted music, such performances cannot be taken back. Therefore, this Court finds that Plaintiffs have satisfied the irreparable harm prong of the injunction test.

■ The second prong of the test requires a court to consider whether there is an adequate remedy at law for the harm that has or could be caused by the infringement. As the *Phelps* court recognized by analyzing prongs one and two of the test together, "the requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first."

*MGM Studios, Inc.*, 518 F.Supp.2d at 1220 (citing *MercExchange, LLC v. eBay*, 500 F.Supp.2d 556, 582 (E.D.Va.2007)); *Lewis v. S.S Baune*, 534 F.2d 1115, 1124 (5th Cir.1976) (" '[o]ften times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable' in the context of a permanent injunction"). As the Fourth Circuit noted in *Phelps*, where calculation of damages and profits for each future event might be possible, the impracticality of doing so because of the speculation and guesswork militates in favor of finding that money damages are inadequate remedies. *Phelps*, 492 F.3d at 544. One need only imagine the difficulty of preventing future infringements. Are Plaintiffs to hire an investigator to attend each musical performance at Defendant's establishment? The mere thought suggests the impracticality of the attempt to quantify actual damages for what is likely to be an ongoing infringement absent such an injunction. Moreover, while the Court could make an award of statutory damages, the same impracticality exists in that endeavor. Therefore, the Court finds that Plaintiffs have satisfied the inadequate remedy at law prong of the injunction test.

### b. balance of hardships

■ The Court must next consider whether a remedy in equity (of a permanent injunction) is warranted given the balance of hardships between Plaintiffs and Defendant. A permanent injunction in this case would force Defendant to stop the performing of copyrighted music at his establishment for which he has no permission or license. Defendant could, of course, continue to play the music and obtain a license by paying the fee described above—$1,501.20 for 2009. The Defendant could also stop playing music copyrighted by ASCAP members. Therefore, the hardship to Defendant resulting from a permanent injunction is relatively minor. On the other hand, the great difficulty of enforcing the copyrights involved here reflects a severe hardship for Plaintiffs if no permanent injunction is issued. The hardship to Plaintiffs if the injunction were denied is most obvious when one considers discovery and enforcement scenarios, as noted above. For example, maintaining a continuing presence at Defendant's establishment, in order to determine whether their copyrighted songs have been publicly performed, would be very costly. On the other hand, a permanent injunction would hopefully relieve Plaintiffs of the need to maintain such a virtual permanent presence to monitor the performances at Defendant's establishment. Therefore, the balance of hardships weighs in favor of issuing a permanent injunction, and Plaintiffs have satisfied this prong of the injunction test.

### c. public interest

■ The Plaintiffs are also required to show that the public interest would not be disserved by a permanent injunction. It is easy to understand that the public interest reflected in the Constitutional protection of copyright, and the congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place. *Designer Skin, LLC v. S & L Vitamins, Inc.*, No. CV 05–3699–PHX–JAT, 2008 WL 4174882, at *6, 2009 U.S. Dist. LEXIS 68467, at *17, 88 U.S.P.Q.2d (BNA) 1679 (D.Az.2008) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir.1983)). On the other hand, it is difficult to conceive of how such a permanent injunction will harm a defendant who has willfully violated the copyright law. Therefore, the Court finds that Plaintiffs have satisfied the public interest prong of the injunction test.

Accordingly, Defendant and his employees are permanently **ENJOINED** from

publicly performing, or causing to be performed, or aiding and abetting the public performance of, any and all music in the ASCAP repertory without proper authorization. *See Ctr. City Music*, 1994 WL 159769, at *5 n. 4 (affirming the district court's injunction prohibiting the defendant from playing any and all copyrighted music in the ASCAP repertory).

### 3. attorney's fees and costs

Under the Copyright Act, a "court in its discretion may allow the recovery of full costs by or against any party," and a court may also "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. This does not mean that courts must award attorney's fees and costs to the prevailing party as a matter of course. Rather, it is wholly in the Court's discretion whether to award these damages. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455(1994).

In order to determine whether an award of attorney's fees should be made to a party under 17 U.S.C. § 505, the Fourth Circuit has articulated four factors for consideration: 1) the motivation of the parties, 2) the objective reasonableness of the legal and factual positions advanced, 3) the need in particular circumstances to advance considerations of compensation and deterrence, and 4) any other relevant factor presented. *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F.3d 503, 505 (4th Cir.1994) (citation omitted). First, it seems clear that Plaintiffs' motivation in bringing this suit was to vindicate rights provided by Congress in the Copyright Act. Second, the objective reasonableness of the position taken by the Plaintiffs is obvious, particularly since Defendant failed to even respond to the suit. Furthermore, even if Defendant believed, as he told one ASCAP representative, that the sole burden of obtaining a license rests with the

performing band, such position cannot be viewed as reasonable since ASCAP told him he was wrong and provided him with case law on the issue to show his attorney. Third, persons in the same situation as Plaintiffs should be encouraged to bring such actions where their patient and thorough efforts to try to work with an infringer have been flatly rebuffed. Therefore, it is clear that attorney's fees should be awarded in this case.

The Court must therefore decide what amount of attorney's fees is proper. The Fourth Circuit and other courts in the Eastern District of Virginia have generally awarded reasonable attorney's fees for copyright infringement cases. *See, e.g., Diamond Star Bldg. v. Freed*, 30 F.3d 503, 506 (4th Cir.1994) (reviewing procedure for awarding attorney's fees in copyright cases); *Music City Music*, 616 F.Supp. at 1003 (granting the recovery of costs and reasonable attorney's fees on the condition that the attorneys submit a detailed affidavit for the court to determine reasonable attorney's fees pursuant to 17 U.S.C. § 505).

The Plaintiffs submitted an affidavit in support of their claim for "reasonable attorney's fees" in the amount of $2,875.00 and also requested leave to file supplemental affidavits regarding costs and attorney's fees as may be warranted by further proceedings in this case. Plaintiffs then subsequently submitted another affidavit requesting reimbursement for $417.59 in costs associated with this action. Plaintiffs later submitted an hourly and itemized breakdown of the attorney's fees and costs requested. Having reviewed such breakdown, the Court finds that the itemized request for attorney's fees and costs is reasonable.

### III. Conclusion

For all of the above reasons, the Court **ORDERS** that default judgment shall be

entered against the Defendant and that Defendant and his employees are permanently **ENJOINED** from publicly performing, or causing to be performed, or aiding and abetting the public performance of, any and all music in the ASCAP repertory without proper authorization. Furthermore, Defendant is **ORDERED** to pay statutory damages in the amount of $3,500.00 per infringement, for a total of $10,500.00; attorney's fees of $,2,875.00; and costs of $417.59.

Defendant is **ADVISED** that he may appeal this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for Plaintiffs and to Defendant at 6001 Holland Road, Suffolk, Virginia 23437.

**IT IS SO ORDERED.**